CITY OF BEAVER DAM, Petitioner-Respondent,

v.

Richard J. CROMHEECKE, Tri-C Development, Inc., Robert J. Eilbes and Mildred Eilbes, Respondents-Appellants.

Court of Appeals

*No. 98–1215. Submitted on briefs July 15, 1998.—Decided October 29, 1998.*

(Also reported in 587 N.W.2d 923.)

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Phillip J. Eckert* of *O'Meara, Eckert, Pouros & Gonring,* West Bend.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Herman D. Schacht,* Beaver Dam.

Before Eich, Vergeront and Deininger, JJ.

DEININGER, J. Tri-C Development, Inc., a real estate development company, its president Richard Cromheecke, and Robert and Mildred Eilbes, the grantors of land developed by Cromheecke, appeal an order granting summary judgment to the City of Beaver Dam in the City's declaratory judgment action concerning the ownership of a parcel of land. The parcel had been offered to the City for dedication as a public street by virtue of a restriction in the Eilbes' deed to Cromheecke's company. Cromheecke contends that the offer of dedication was withdrawn before the City accepted it. We conclude, however, that although the City's formal resolution of acceptance was passed after it had received a document from the Eilbes purporting to withdraw the offer of dedication, the offer had been effectively accepted by the actions of city officials, and the common-law dedication of the parcel was thus complete. Accordingly, we affirm the trial court's grant of summary judgment to the City.

## BACKGROUND

In 1989, Robert and Mildred Eilbes conveyed by warranty deed a 66' x 1340' strip of land to C&H Devel-

opment, the predecessor to Tri-C Development. C&H conveyed the parcel to Tri-C via quit-claim deed on November 30, 1995. Richard Cromheecke is president of Tri-C Development, and we will refer to him and the corporations collectively as "Cromheecke" except where it is necessary to separately identify these parties.

The Eilbes' deed to Cromheecke contained the following restriction:

> Premises described herein are to be used for a public right of way only and it is the intent of the parties that the Buyer will dedicate said premises to the City of Beaver Dam for a public street only.

The strip of land ran through the middle of a larger parcel that became the Georgetown Heights Fourth Addition, a subdivision that Cromheecke platted in 1992. In Cromheecke's proposed plat, most of the strip of land became an extension of Farwell Road, running north and south through the Fourth Addition. The last 120 feet of the strip, however, at the northern limit of the Fourth Addition, was platted as "Outlot 1" and reserved as private land. Thus, Farwell Road terminated at Eilbes Avenue, an east-west street, and did not run the last 120 feet to the northern limit of the Fourth Addition.

The Beaver Dam Board of Public Works initially conditioned its approval of Cromheecke's Fourth Addition plat on having Outlot 1 designated as a potential future public street right-of-way. Cromheecke, however, ultimately persuaded the City to forego this requirement, and in the approved plat, Outlot 1 is not shown as part of the Farwell Road right-of-way. The City was, at the time, unaware of the restriction in the Eilbes' deed that required Cromheecke to dedicate the

entire 1340-foot strip, and Cromheecke apparently made no mention of it.

For approximately five years, Cromheecke and the City treated Outlot 1 as Cromheecke's private property. Cromheecke permitted the owner of a lot adjacent to Outlot 1 to use Outlot 1 as a driveway. In 1992, Cromheecke paved Outlot 1 and he has cleared the snow from it since then. Cromheecke has also paid property taxes on Outlot 1.

Subsequent to its platting, areas beyond the Fourth Addition were apparently being developed, and the City again wanted to acquire Outlot 1 for an extension of the Farwell Avenue right-of-way. On February 19, 1997, the City Plan Commission proposed placing Outlot 1 on the official city street map as a proposed street right-of-way. On February 24, 1997, the City's Board of Public Works directed the city attorney to acquire Outlot 1 by condemnation, pursuant to § 32.05, STATS. While conducting a title search in preparation for the condemnation proceeding, the city attorney discovered the restriction in the Eilbes' deed. The city attorney abandoned the condemnation process, and attempted instead to accept what he construed as an offer of dedication of Outlot 1 in the Eilbes' deed.

The city attorney filed a Petition for Declaratory Judgment on March 14, 1997, seeking a declaration of the City's rights to Outlot 1. The Board of Public Works introduced a resolution accepting the dedication of Outlot 1 at its 7:00 p.m. meeting on March 17. After the Board of Public Works meeting, but before the 8:00 p.m. meeting of the City Council, Cromheecke presented to the city clerk a "Withdrawal of Reservation to Dedicate," signed by the Eilbes. The document purported to rescind the "public right-of-way" restriction in the 1989 deed as to Outlot 1. Shortly thereafter,

the City Council passed the resolution formally accepting the dedication of Outlot 1 at its 8:00 p.m. meeting on March 17. Also at this meeting, the City Council formally adopted the Plan Commission proposal to add Outlot 1 to the official city street map.

Both the City and Cromheecke moved for summary judgment in the declaratory judgment action. The trial court denied Cromheecke's motion and granted summary judgment to the City, concluding that it had accepted the offer before it was withdrawn, and that therefore the City had acquired Outlot 1 by common-law dedication. Tri-C, Cromheecke and the Eilbes appeal the order granting summary judgment to the City.

## ANALYSIS

We review the trial court's grant of summary judgment using the same methodology as the trial court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). That methodology is well known, and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97, 536 N.W.2d at 182; *see also* § 802.08(2), STATS. In reviewing a summary judgment, we, like the trial court, are limited to a consideration of the pleadings and evidentiary facts submitted in support of and opposition to the motions. *See Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 573, 431 N.W.2d 721, 724 (Ct. App. 1988).

■ Wisconsin recognizes both statutory and common-law dedication. *See* § 80.01, STATS.; *K.G.R. v. Town of East Troy*, 191 Wis. 2d 446, 450, 529 N.W.2d 231, 232 (1995); *Galewski v. Noe*, 266 Wis. 7, 15, 62 N.W.2d 703, 707 (1954). At issue here is a common-law dedication. "The essential requisites of a valid common-law dedication are that there must be an intent to dedicate on the part of the owner and an acceptance of the dedication by the proper public authorities or by general public user." *Gogolewski v. Gust*, 16 Wis. 2d 510, 514, 114 N.W.2d 776, 779 (1962) (quoting *Galewski v. Noe*, 266 Wis. 7, 12, 62 N.W.2d 703, 706 (1954)). An offer to dedicate may be withdrawn at any time before it is accepted. *See Galewski* at 14, 62 N.W.2d at 707.

Cromheecke does not dispute that the original owners, the Eilbes, intended to dedicate Outlot 1, along with the rest of the strip described in the 1989 deed, to the City for use as a street. The restriction in the Eilbes' deed constituted an offer of dedication of the strip to the City. *See Schumski v. Village of Hales Corners*, 14 Wis. 2d 301, 111 N.W.2d 88 (1961) (offer of common-law dedication can be made via deed restriction); *cf.* § 80.01(5), STATS.[1]

---

[1] Section 80.01(5), STATS., provides, in relevant part:

> Whenever a deed, land contract or mortgage of lands abutting on an existing public street, highway or alley or a projected extension thereof hereafter executed and recorded contains language reserving or excepting certain lands for street, highway or alley purposes, such reservation or exception shall constitute a dedication for such purpose to the public body having jurisdiction over such highway, street, alley or projected extension thereof, unless the language of such reservation or exception plainly indicates an intent to create a private way. Such dedication may be accepted by resolution of the governing body having jurisdiction over such street, highway, alley or projected extension thereof.

The Beaver Dam City Council first acted to formally accept the offer of dedication moments after Cromheecke delivered the Eilbes' purported revocation of the offer via the "Withdrawal of Reservation to Dedicate" on the night of March 17. Thus, the issue on appeal, as it was in the trial court, is whether the offer was informally, but effectively, accepted before it was withdrawn by the Eilbes.[2]

■

Informal acceptance of a common-law dedication may be accomplished either by the actions of "the proper public authorities or by general public user." *Galewski*, 266 Wis. at 12, 62 N.W.2d at 706; *see also* 11A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 33.47 (3d ed. 1991). The general public itself may accept an offer of dedication by using the offered property for a "considerable length of time." *See Galewski*, 266 Wis. at 14, 62 N.W.2d at 707. It is not

---

[2] Although the City has not raised the issue on appeal or in the trial court, we note that the "Withdrawal of Reservation to Dedicate" presented to the city clerk on March 17, 1997, may not have been effective to withdraw the offer of dedication because it was not joined in by all necessary parties. The Eilbes, as the original grantors, did not have the power unilaterally to revoke the offer of dedication because they had already conveyed the land subject to the dedication. "In the event the original grantor parts with a portion of the area subject to the original offer, he parts with a portion of the right to revoke and only by *unanimous action of all the successors* can the offer be revoked." *K.G.R. v. Town of East Troy*, 191 Wis. 2d 446, 458, 529 N.W.2d 231, 235 (1995) (emphasis added). At a minimum, then, it would appear that the revocation of the offer to dedicate would have had to been joined in by Tri-C, the Eilbes' successor to the strip granted in the 1989 deed. However, because the City has not raised or briefed this issue, we do not consider it. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

necessary that large numbers of the public make use of the offered property, so long as the extent and nature of the public use is consistent with the purpose for which the property was dedicated. *See* McQUILLIN, *supra,* § 33.50.

We cannot conclude on the record before us that the general public used Outlot 1 at all. The parties do not dispute that Cromheecke's company—either Tri-C or its predecessor C&H Development—had paved and removed snow from Outlot 1 since the plat of the Fourth Addition was approved in 1992. The only use of Outlot 1 cited by either party is related to a residence which fronts on Eilbes Avenue and is situated adjacent to Outlot 1. Outlot 1 provides driveway access to the residence, and Outlot 1 is consequently used by the owners, their family and friends. Such use of Outlot 1 is as consistent with the use of a private road as it is with that of a public street, and the use does not necessarily establish acceptance of the dedication of Outlot 1 by general public user.[3]

---

[3] The trial judge indicated that he had himself driven on Outlot 1, and that, in his own observation, Outlot 1 was available to the public. The trial judge's personal observations, however, are not part of the "evidentiary facts" which we review on summary judgment. We also reject the City's contention that the trial judge could take judicial notice of the fact that Outlot 1 was open to the public. Judicial notice is only appropriate when a fact is "generally known within the territorial jurisdiction of the trial court or . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Section 902.01(2), STATS. The trial judge's personal observations do not, in themselves, establish that it was generally known in the jurisdiction that Outlot 1 was used by or open to the public. *See In re Estate of Friedli*, 164 Wis. 2d 178, 188–90, 473 N.W.2d 604, 607–08 (Ct. App. 1991).

The acceptance of an offer of dedication may also be accomplished "by implication from the acts of municipal officers." *See* McQUILLIN, *supra,* § 33.47; *see also Galewski,* 266 Wis. at 13, 62 N.W.2d at 706–07. Acceptance may be shown by

> any act with respect to the property claimed to be dedicated that clearly indicates an intent on the part of the public to treat the dedication as accepted by it, such as where the public authorities assume jurisdiction and dominion over the property. There need be but little affirmative action to indicate an intention to accept a dedication.

McQUILLIN, *supra,* § 33.47 (citations omitted). The City contends that numerous acts by its officials constituted implied acceptance of the offer of dedication: (1) the Board of Public Works initial conditioning of plat approval on the designation of Outlot 1 for future public street right-of-way, and its direction to the city attorney on February 24, 1997, to acquire the outlot by condemnation for street purposes; (2) the Plan Commission's recommendation on February 19, 1997, that Outlot 1 be added to the city street map as a potential future street; (3) the city attorney's filing of the declaratory judgment action on March 14, 1997; (4) the City's attempt to negotiate with Cromheecke for the acquisition of Outlot 1; and (5) the placement of city utilities on Outlot 1.[4]

---

[4] The trial court stated in its memorandum decision that "[i]t has been established that there are city utilities in the street." Cromheecke disputes that the City had placed utilities on Outlot 1 prior to March 17, 1997. The City's other activities are undisputed.

We conclude that the actions of the City constituted acceptance of the offer of dedication prior to the purported revocation on March 17, 1997. In evaluating whether the actions of city officials indicate an intent to assume jurisdiction and dominion over the property in this case, we bear in mind that the City did not have actual knowledge of the offer to dedicate contained in the 1989 deed until February 28, 1997, the date of the title search procured by the city attorney as a prelude to condemnation proceedings. The record confirms that the City consistently expressed its interest in obtaining a public right-of-way over Outlot 1, and that the City took appropriate steps to acquire Outlot 1: first, by negotiating with Cromheecke; then by preparing to acquire the outlot by condemnation; and finally, when it became aware of the offer to dedicate, by filing a court action to confirm its interest.

Once the city attorney became aware of the Eilbes' deed containing the offer to dedicate Outlot 1, the city attorney acted on March 14, 1997, to confirm the City's jurisdiction and dominion over the property by filing this action seeking a declaration that the City had acquired a public right-of-way in Outlot 1 by virtue of the offer of dedication contained in the 1989 deed. "The bringing of an action by a municipality to recover land as to which there has been an offer to dedicate is generally considered to be an acceptance of the dedication." McQuillin, *supra*, § 33.49; *see also George W. Armbruster, Jr., Inc. v. City of Wildwood*, 41 F.2d 823, 828 (D.N.J. 1930); *Reiman v. Kale*, 403 N.E.2d 1275, 1278 (Ill. App. 1980). With the filing of the declaratory judgment action, the City accepted the offer expressed in the Eilbes' 1989 deed, and the common-law dedication of Outlot 1 was complete.

Cromheecke contends that because the declaratory judgment action was not authorized by a vote of the city council, the declaratory judgment action is not an act by the proper public authorities. We disagree. Although city council action is required to accomplish formal acceptance of a dedication, the present inquiry is whether other, informal acts of municipal officers constituted an implied acceptance. Cromheecke points to § 62.09(7)(a), STATS., which provides that "[t]he corporate authority of the city shall be vested in the mayor and common council," but he cites no support for his contention that only a "duly adopted resolution" by the city council could empower the city attorney to commence the instant litigation. The Board of Public Works instructed the city attorney to begin the process of acquiring Outlot 1 through condemnation under § 32.05, STATS. Ultimately, condemnation proceedings would have required a vote of the city council. *See* § 32.05(1), STATS. The city attorney's preparation for the condemnation proceedings, however, revealed that condemnation would not be necessary.

The declaratory judgment action offered a more efficient means of achieving the City's goal of acquiring a public right-of-way in Outlot 1. Under § 62.09(12), STATS., the city attorney is authorized to "conduct all the law business in which the city is interested." A city attorney "generally has power to institute court actions." *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 66, 452 N.W.2d 360, 365 (1990) (citation omitted).[5]

---

[5] The supreme court in *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 68–69, 452 N.W.2d 360, 366 (1990), concluded that only the city council could accept an offer to settle a lawsuit pursuant to a stipulation that had been entered into between the plaintiff and the city attorney. The question presently before us, however, is whether the city attorney had the power, without the

Accordingly, we conclude that the city attorney acted within his authority in commencing the declaratory judgment action once he discovered the restriction in the Eilbes' deed offering to dedicate Outlot 1 to the City.

Finally, although we do not base our decision on equitable principles, we note that Cromheecke was the party who from early on possessed the essential information which would have made it possible to avoid this controversy. He was a principal of the development company that obtained the 1989 deed from the Eilbes and prepared the proposed plat of the Fourth Addition in 1991. When Cromheecke chose to withhold from the extension of Farwell Road the northernmost 120 feet of the strip his company had acquired from the Eilbes, all of which was intended for public right-of-way, he should have asked the Eilbes to amend the deed restriction before he submitted the proposed plat of the Fourth Addition. The City consistently expressed its interest in acquiring the outlot for street purposes and acted promptly to accept it when it learned of the 1989 offer to dedicate. Cromheecke's failure, until March 17, 1997, to do what he could have done in 1991, is in large measure responsible for the present litigation and its result.

## CONCLUSION

For the reasons discussed above, we affirm the trial court's order granting summary judgment to the

council's specific authorization, to commence this action in order to further the City's interests in acquiring rights to Outlot 1. We conclude that he did.

City and denying summary judgment to Cromheecke, Tri-C and the Eilbes.

*By the Court.*—Order affirmed.