Rene Gharibeh, Patricia Gharibeh, and ARMS Corporation, Plaintiffs,
v.
Won Kim and Ji Heon Kim, Defendants-Third-Party Plaintiffs-Appellants,
v.
Jane Darling, Alan Johnson, Investors Limited Realty Corp., and General Insurance Co. of America, Third-Party Defendants-Respondents.
No. 03-1715.
Court of Appeals of Wisconsin.
Opinion Filed: March 31, 2004.
Before Anderson, P.J., Nettesheim and Snyder, JJ.
¶1. PER CURIAM.
Won and Ji Heon Kim appeal from an order dismissing their claims against real estate agents Jane Darling and Alan Johnson, Investors Limited Realty Corp., and General Insurance Co. of America (collectively Darling). Won Kim argues that summary judgment should have been granted in their favor. We conclude that summary judgment was appropriate because there was no reasonable reliance on alleged misrepresentations by Darling. We affirm the order.
¶2. Darling and Johnson are partners in a real estate brokerage and investment firm known as Investors Limited Realty Corp. Won Kim ran a dry cleaning business across the street from Darling's office and was acquainted with Darling for nearly nine years when the events precipitating this action took place. Kim was looking for a new business venture. Darling indicated she knew of a gas station for sale. Darling gave Kim a listing sheet describing the gas station, its sale price, and annual income and expenses. Kim asked Darling to gather information on additional expenses he believed were missing and Darling presented Kim with revised figures showing a lower net annual profit. Darling arranged for Kim to meet the owner of the station, Rene Gharibeh. Kim asked Gharibeh if the figures on the listing sheet were accurate and Gharibeh said they were.
¶3. In July 2000, Kim made an offer to purchase the gas station. That offer was rejected. Kim eventually leased the gas station from Gharibeh and took occupancy on October 31, 2000. The lease contained an option to buy after three years. Finding that the gas station was not financially viable, Kim defaulted on the lease and Gharibeh commenced an action for eviction. Kim counterclaimed for recession and damages for misrepresentation. Kim also filed a third-party complaint against Darling alleging that she misrepresented the gas station's profitability on the listing sheet she provided. Kim labeled his claims: strict responsibility, intentional misrepresentation, and negligent misrepresentation.[1]
¶4. In January 2003, Darling moved for summary judgment. The motion was scheduled for hearing on March 17, 2003. On March 11, 2003, Kim filed a motion for summary judgment. An order entered March 28, 2003, granted Darling's motion. Kim's motion for reconsideration was denied.
¶5. We review the circuit court's grant of summary judgment using the same methodology as the circuit court. City of Beaver Dam v. Cromheecke, 222 Wis. 2d 608, 613, 587 N.W.2d 923 (Ct. App. 1998). There is no need to repeat the well-known methodology; the controlling principal is that when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id.; Wis. Stat. § 802.08(2).
¶6. One of Kim's initial arguments is that a question of fact exists regarding Darling's intent or recklessness and that a jury must resolve this disputed issue of fact on his claim for intentional misrepresentation. This argument is disingenuous considering that Kim also moved for summary judgment on all claims.[2] When both parties move by cross-motions for summary judgment, it is the equivalent of a stipulation of facts permitting the circuit court to decide the case on the legal issues. See Millen v. Thomas, 201 Wis. 2d 675, 682-83, 550 N.W.2d 134 (Ct. App. 1996).
¶7. Mindful of the premise that even in the face of cross-motions for summary judgment, the circuit court must independently verify that no material issue of disputed fact exists, see id. at 690 (Brown, J. concurring), we turn to consider whether summary judgment was appropriate. Kim argues that his claims for strict responsibility and negligent misrepresentation were ignored, that the circuit court erroneously concluded that intentional conduct was a necessary element of Kim's claims, and that the undisputed evidence was that Darling made false representations that Kim relied on to his damage. We need not address these specific arguments because Kim's misrepresentation claims fail on a single common element.
¶8. The one common element to Kim's strict responsibility misrepresentation and intentional misrepresentation claims is reasonable reliance. Grube v. Daun, 173 Wis. 2d 30, 53-54, 496 N.W.2d 106 (Ct. App. 1992) (misrepresentation requires proof that the defendant made an untrue factual representation which the plaintiff believed to be true and relied on to his or her detriment); Ritchie v. Clappier, 109 Wis. 2d 399, 404, 326 N.W.2d 131 (Ct. App. 1982) (reliance must be "justifiable"). Although justifiable reliance is not an element of a cause of action for negligent misrepresentation, see Imark Ind., Inc. v. Arthur Young & Co., 141 Wis. 2d 114, 130, 414 N.W.2d 57 (Ct. App. 1987), rev'd in part on other grounds, 148 Wis. 2d 605, 436 N.W.2d 311 (1989), inquiry is made of the buyer's negligence in relying upon the representation. Lambert v. Hein, 218 Wis. 2d 712, 731, 582 N.W.2d 84 (Ct. App. 1998). Thus, assuming that Darling made untrue representations regarding the profitability of the gas station and that Kim relied on the representations, whether Kim's reliance was justified and whether his contributory negligence precludes recovery are questions of law determinable on summary judgment. Jankee v. Clark County, 2000 WI 64, ¶50, 235 Wis. 2d 700, 612 N.W.2d 297; Ritchie, 109 Wis. 2d at 406. The reasonableness of one's reliance on a misrepresentation is judged after reviewing the facts of each case, including "the intelligence and experience of the misled individual and the relationship between the parties." Bank of Sun Prairie v. Esser, 155 Wis. 2d 724, 734, 456 N.W.2d 585 (1990).
¶9. We conclude that Kim's reliance on Darling's representations was not reasonable. Kim is a businessman; he graduated from college with a degree in business administration; he built a successful dry cleaning business starting with one store and expanding to four stores; he purchased and sold businesses prior to the gas station venture.
¶10. The listing sheet provided by Darling included the following notation at the bottom: "Information shown on this sheet is believed to be accurate and reliable, but is not guaranteed and is subject to correction." Indeed, Kim, as an experienced businessman, recognized that the sheet omitted certain expenses and he asked Darling to obtain further information. He acknowledged that even after corrections were made, the listing sheet still omitted some expenses.
¶11. Kim asked Gharibeh for copies of the gas station's tax returns and Gharibeh refused to provide them. Kim had an attorney look over the lease. His attorney and accountant both advised him to look at the financial statements of the gas station. His attorney suggested a contingency in the lease that would give Kim, after signing the lease and before taking possession, the right to inspect the premises and review all documents relating to the business and to cancel the transaction if not satisfied with his inspection. The lease itself provided that:
Prior to executing this Lease, Tenant was afforded the opportunity to and, in fact undertook a program of due diligence respecting the Leased Premises ... and made such inspections and studies of the Leased Premises as it deemed appropriate, and reviewed such documentation and information respecting such as it deemed appropriate, and accordingly, Tenant acknowledges that it is leasing the Leased Premises and acquiring the personal property and the business located thereon in "as is, with all faults" condition and that no representation or warranties have been made by Landlord or its agents and representatives respecting the Leased Premises, the personal property or the profitability of the Leased Premises.
¶12. For thirty days after signing the lease and prior to taking possession, Kim worked alongside Gharibeh to learn the business. At no time during that period did he ascertain what the expenses were or ask to see financial information. Quite simply, as Kim admitted, he took Gharibeh's word on what the business could make.
¶13. This was a significant business transaction. The lease agreement called for rental payments of slightly more than $32,000 a month. The option to purchase price was over $3 million. It is inconceivable that a businessman would undertake such a venture on the basis of figures, some scribbled in by hand, on a one-page document which itself disclaimed accuracy. It is unreasonable for any person to sign a lease document acknowledging a "program of due diligence" of inspection and review without actually having conducted that review, particularly in the face of professional advice to review the financial documents and the seller's refusal to provide tax returns. "The law requires [people], in their dealing with each other, to exercise proper vigilance and apply their attention to those particulars which may be supposed to be within the reach of their observation and judgment, and not to close their eyes to the means of information accessible to them." Kanack v. Kremski, 96 Wis. 2d 426, 432, 291 N.W.2d 864 (1980), quoting Farr v. Peterson, 91 Wis. 182, 187-88, 64 N.W. 863 (1895). As a matter of law, Kim's reliance was not reasonable and his own negligence in proceeding on the basis of the information provided by Darling exceeded Darling's negligence, if any, in misrepresenting the profitability of the gas station.
¶14. Kim's final argument is that the circuit court erroneously exercised its discretion in denying his motion for reconsideration. See Envirologix Corp. v. City of Waukesha, 192 Wis. 2d 277, 287, 531 N.W.2d 357 (Ct. App. 1995) (suggesting that the circuit court's decision to substantively reconsider summary judgment is subject to a claim that discretion was misused). Kim contends that the day after Darling's motion for summary judgment was granted, he was provided crucial new evidence by Gharibeh's answers to a discovery request to admit or deny. He explains that for the first time, Gharibeh said the information given to Kim was inaccurate and Gharibeh denied having given Darling any of the information on the listing sheet.
¶15. Even assuming this new information supports Kim's motion for reconsideration, see Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (motions for reconsideration serve the limited function of allowing the presentation of newly discovered evidence but not new evidence which could have been adduced while the motion for summary judgment was pending), it does not require reversal. The new evidence only demonstrates the falsity of the representations. It does not negate the absence of reasonable reliance or Kim's contributory negligence. The circuit court properly exercised its discretion in denying the motion for reconsideration.
By the Court.  Order affirmed.
NOTES
[1] Kim's appellate description of his claims includes a claim for false advertising. His motion for summary judgment also argued a violation of Wis. Stat. § 100.18 (2001-02) by false advertising. However, his third-party complaint made no reference to false advertising or § 100.18.

All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Kim's argument that his motion for summary judgment was unopposed and should have been granted is similarly disingenuous. Notwithstanding that the time to respond to his motion had not expired by the March 17, 2003 hearing, his motion was disposed of by the circuit court's ruling on Darling's motion. At the summary judgment hearing, Kim never asked the circuit court for a formal ruling on his motion.