Barbara Cohn, Bob Rohr, David Ott, Larry Yaku-
tis, Stan Stawaaz, Mary Mavon, Richard Vogt,
Valerie Kunde, Barbara Mertes-Wysocki, Brent
Matson, Jeff Zwolak, John Dovgin, Carolyn Dov-
gin, Richard Peck, Marleen Peck, Edward
Mooney, Steve Gutschick, Nadine Radtke, Victo-
ria Rogers, Barry Shechtman, Kay Watters,
Daniel Aronson, Ken Johnson, Kimberly Ber-
nard, Maureen Alcorn, Roberta Weisner, Richard
Poteracki and Rachelle Poteracki, Plaintiffs-
Respondents-Cross-Appellants,†

v.

Town of Randall, Defendant-Appellant-Cross-
Respondent.

Court of Appeals

*No. 00–2176. Oral argument May 16, 2001.—Decided July 3,
2001.*

2001 WI App 176

(Also reported in 633 N.W.2d 674.)

---

† Petition to review denied 9-19-01.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Raymond J. Pollen* and *Deborah S.R. Hoffmann* of *Crivello, Carlson, Mentkowski, Steeves, S.C.* and *Larry Steen* of *Larry Steen Law Office*, Milwaukee. There was oral argument by *Raymond J. Pollen* and *Larry Steen*.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the brief of *Adrian P. Schoone* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.* and *Robert E. Hankel* of *Knuteson, Powers & Wheeler, S.C.*, Racine. There was oral argument by *Robert E. Hankel*.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. The Town of Randall appeals from a summary judgment finding no dedication of roadways for public use. Residents who live in the subdivisions containing the roadways cross-appeal the dismissal of their suit for certiorari review of the actions of the Town Board. Because we determine that there has been an effective common law dedication of roadways for public use, we reverse the judgment in

favor of the residents. Regarding the cross-appeal, we determine that there has been no misuse of discretion by the Town Board.

¶ 2. This case arises in the context of a contemplated road improvement project to certain streets located in the South Nippersink area of the Town. The contemplated project was substantial and resulted in a special assessment on a parcel unit basis in the amount of $13,297.47. Thereafter, owners of forty-five parcels in the South Nippersink area filed notifications with the Town Board that any purported dedication of land owned by them to the Town for public purposes was revoked. In light of the residents' opposition to the road project, the Town Board delayed approval of the project in order to allow the residents an opportunity to present an alternative plan for improving the roads.

¶ 3. On October 26, 1999, the residents presented an alternative plan in a public hearing. The residents believed their plan would allow the roads to be improved with far less expense and disruption to their properties. Nevertheless, that evening, the Town Board voted to approve the original, more elaborate improvement project and declared the South Nippersink subdivision roads as public roads.

¶ 4. On appeal, the Town challenges the trial court's conclusion that the plats disclose an intent to create private rather than public roads. The residents request that we overturn the decision of the Town Board to lay out roads and levy assessments as arbitrary and capricious. We heard oral argument from the parties on May 16, 2001, in Racine.

## Standard of Review

¶ 5. The court of appeals reviews summary judgment motions de novo. *Blazekovic v. City of Milwaukee*, 225 Wis. 2d 837, 840, 593 N.W.2d 809 (Ct. App. 1999), *aff'd*, 2000 WI 41, 234 Wis. 2d 587, 610 N.W.2d 467. For summary judgment to be granted, there must be no genuine issue of material fact and the moving party must be entitled to judgment as a matter of law. *Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 679, 579 N.W.2d 264 (Ct. App. 1998). Furthermore, the interpretation of a written instrument is a question of law that this court decides without deference to the trial court. *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979). Whether the language in the instrument is ambiguous is also a question of law. *See Moran v. Shern*, 60 Wis. 2d 39, 46–47, 208 N.W.2d 348 (1973). Where ambiguity exists, the court may consider extrinsic evidence to determine the intent of the parties. *Id.* at 48.

## Discussion

### 1. Dedication for public use.

¶ 6. The first legal issue to address is whether there has been an offer and acceptance of a dedication of roads for public purposes. "Dedication is defined to be the act of giving or devoting property to some proper object, *in such a way as to conclude the owner.*" *Kennedy v. Barnish*, 244 Wis. 137, 141, 11 N.W.2d 682 (1943). Wisconsin recognizes two distinct types of dedication— statutory and common law. *Galewski v. Noe*, 266 Wis. 7, 15, 62 N.W.2d 703 (1954). Statutory dedication consists in whatever conduct is prescribed by statute, which usually requires the execution and filing of a plat in

accordance with local law.[1] KENNETH H. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 25.26 (4th ed. 1997). Common law dedication requires an explicit or implicit offer to dedicate land, and an acceptance of the offer by the municipality or by general public use. *Galewski*, 266 Wis. at 12. Intent to dedicate to the public use is an essential component of either statutory or common law dedication, since the municipality cannot accept that which is not offered in the first instance. Therefore, in a question of common law dedication, the threshold issue to our inquiry is the intent of the grantor at the time the subdivisions were created. Although the Town contends that there was both statutory dedication and common law dedication, we need only discuss common law dedication as that will resolve this matter.

---

[1] The applicable statutes are as follows:

**Changing streets into highways.** The town board of any town within which may be situated any village or other plat duly certified and recorded and not included within the limits of any incorporated village, may make an order to be recorded by the town clerk declaring such streets and alleys in such village or other plat as they may deem necessary for the public use to be public highways . . . .

WIS. STAT. § 80.38 (1925). The above statute must be read in conjunction with WIS. STAT. § 236.11 (1925):

[A]nd the land intended to be for the streets, alleys, ways, commons or other public uses as designated on said plat shall be held in the corporate name of the town, city or village in which such plat is situated in trust to and for the uses and purposes set forth, expressed and intended. Such map or the record thereof or a certified copy of such record shall be presumptive evidence of the truth of the facts therein stated in accordance with the provisions of this chapter.

All other references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 7. The issue of intent in common law dedication is usually resolved by the trier of fact and, upon review by this court, is subject to the clearly erroneous rule. In this case, the grantor has long since passed away and the only evidence available to glean his intent is documentary evidence in the form of recorded plats and deeds. We are in just as good a position as the trial court to make factual inferences based on documentary evidence and we need not defer to the trial court's findings. *State ex rel. Sieloff v. Golz*, 80 Wis. 2d 225, 241, 258 N.W.2d 700 (1977). Moreover, an interpretation of documentary evidence involves a question of law to be reviewed independently on appeal. *See DeLap v. Inst. of Am., Inc.*, 31 Wis. 2d 507, 510, 143 N.W.2d 476 (1966). Inferences drawn from documentary evidence do not bind this court. *Id*. However, despite our de novo standard of review, we nonetheless value the trial court's decision. *Kailin v. Rainwater*, 226 Wis. 2d 134, 147, 593 N.W.2d 865 (Ct. App. 1999).

¶ 8. On August 1, 1918, E.G. Shinner acquired land which became the 5th and 6th Additions to Nippersink Park. On July 6, 1926, the plat map of Shinner's 5th Addition was recorded with the register of deeds. The Surveyor's Certificate stated that the land was subdivided into nine blocks and "again into lots as shown together *with certain streets dedicated as common property to the owners of this subdivision and of any future adjacent subdivision.*" The Town approved the subdivision plat, noting that "certain streets are laid out and dedicated as common property to the owners of their subdivision and any future adjacent subdivision."

¶ 9. Shinner's 6th Addition was recorded on June 1, 1929, with the surveyor subdividing the property into blocks and lots, "*together with certain streets, walks and*

125

*park, dedicated as common property as in former subdivisions to this park.*" The Town approved this plat also, stating "whereby certain streets, walks and park are laid out to the satisfaction of the Town Board therefor be it resolved . . . that the said map of said subdivision . . . is accepted and approved for the purpose shown therein."

¶ 10. Other than the language emphasized above, there are no markings on the plat maps to indicate whether the roads are public or private. Therefore, we must construe the words "dedicated as common property to the owners," which appear explicitly or by incorporation in both plats, to determine whether Shinner intended to dedicate these roads for public use. The residents present a strong argument that common property to owners can only mean that Shinner intended these roads to be private, for the sole use of the homeowners. This would ensure that all owners of property in the subdivisions would have access along private roadways to public roads.

¶ 11. The Town contends that because the first plat refers to future adjacent subdivisions, Shinner must have intended that the roads would be used by the public as the subdivisions developed. The Town further argues that the word "common," when used in plats of that time period, signaled the intent to dedicate for public use. *See, e.g., Mueller v. Schier*, 189 Wis. 70, 79–80, 205 N.W. 912 (1926) (interpreting "the [land] to remain perpetually as a private common park, containing a common carriage drive and walk," as intent to create a public street).[2]

---

[2] The Town also argues that under statutes in effect in 1926, the recording of plats with marked streets is evidence of the intent to dedicate the marked streets to the public. We are

¶ 12. We determine that the theories advanced by both sides are reasonable and the plats are therefore ambiguous with respect to Shinner's intent to dedicate for public use. Under the current version of the law, such ambiguity is resolved in favor of the Town: platted streets that are not marked private are presumed to be public. *See* Wis. Stat. § 236.20(4)(c). However, this legislation was not in existence at the time these plats were recorded. To resolve the ambiguity we may, under principles of common law dedication, look beyond the plat maps and surveyors' certificates to other supporting documents and circumstances to discern Shinner's

not convinced that this accurately describes the law in effect at the time. Moreover, the case law the Town relies on does not squarely state this proposition. *Knox v. Roehl*, 153 Wis. 239, 140 N.W. 1121 (1913), involved a city which was dedicating its own land, a situation in which questions of intent and acceptance merge more or less into each other. *Id.* at 244.

The Town also posits that the court in *Lake Beulah Protective & Improvement Ass'n v. Christenson*, 272 Wis. 493, 76 N.W.2d 276 (1956), found intent based on the fact that the roads were shown on the plat and the plat was offered for acceptance and recorded. In fact, the court based its finding of intent on a statute creating a presumption that streets marked on plats would be public unless clearly marked private. *Id.* at 497. Because that statute was not in effect at the time the plat was recorded, the court later withdrew its reliance on it, concluding that there was no evidence that the road was ever intended to be private. *Id.* at 498a. The court did not state that it found intent based on the fact the street was marked and recorded.

Finally, in *Gogolewski v. Gust*, 16 Wis. 2d 510, 114 N.W.2d 776 (1962), the court expressed doubt that there was evidence of the owner's intent to dedicate a road for public purposes even though the road had been marked on a plat and recorded. *Id.* at 514.

127

intent. *See Galewski*, 266 Wis. at 12 (offers to dedicate need not be in writing or in any particular form).

¶ 13. In 1928, Shinner sold several lots in the 5th Addition and recorded a deed that contained the following language:

> This deed is made with the following restrictions and reservations which shall run with the title to the above described premises: . . . 5. That the owner of the property described herein shall pay annually . . . for the upkeep, repair and maintenance of . . . roads, avenues, and boulevards in what is known as Nippersink Park which payments shall be made *until said Nippersink Park shall be organized into a municipality* . . . . 7. That the owner of the above described premises, his family, guests, servants and employees shall have the perpetual right to use any and all park-ways, parks, lanes, avenues, streets, boulevards, roadways, drives or land, including lake frontage, *maintained for the use of the Public in what is known as Nippersink Park.* (Emphasis added.)

The intent which was previously ambiguous is clarified by the highlighted language in the 1928 deed. The first highlighted language confirms the Town's position that Shinner envisioned public roads integral to a developing community. This deed foresees a Nippersink municipality taking responsibility for road maintenance; this could only occur if the roads had been dedicated to the public in the first instance. The intent to dedicate for public use is then clearly stated in the second highlighted language that preserves for homeowners perpetual use of roads maintained for the use of the

public. No clearer statement of intent to dedicate for public use could be offered.[3]

¶ 14. The next question to be determined is whether there was an acceptance by the proper public authorities or by general public users. We will assume for purposes of this opinion that the Town chairman's declination to sign the resolution for laying out the roads and levying the assessments means that the offer to dedicate has not yet been formally accepted. Relying on *Lake Beulah Protective & Improvement Ass'n v. Christenson*, 272 Wis. 493, 76 N.W.2d 276 (1956), however, we conclude there has been an acceptance by public user. As in *Lake Beulah*, we note the roads were never posted as private until this action was commenced. *Id.* at 497. The public was free to use the roads for ingress and egress for over seventy years without objection. As in *Lake Beulah*, it appears that residents made efforts through the years to have the Town take over and maintain the roads as public roads. We agree with the court in *Lake Beulah* that this indicates the residents considered the public's use of the roads to be sufficient to warrant their maintenance by the Town as public roads. *Id.*

¶ 15. In September 1999, the residents notified the Town Board that they revoked any offer to dedicate land for public use. *See K.G.R. v. Town of East Troy*, 191 Wis. 2d 446, 458, 529 N.W.2d 231 (1995) (grantor's offer to dedicate may be revoked only by unanimous action of

---

[3] The trial court refused to consider the 1928 deed because it restricted the scope of its review of the documentary evidence to the four corners of the plats. We disagree with this approach. Our responsibility is to discern the intent of the grantor. Therefore, any documentary evidence that reflects Shinner's intent is highly relevant and meaningful to the inquiry and we are obligated to consider it in our review.

all successors in interest). We determine, however, that prior acceptance by general public users prevented an effective revocation. *Galewski*, 266 Wis. at 14; *City of Beaver Dam v. Cromheecke*, 222 Wis. 2d 608, 615–18, 587 N.W.2d 923 (Ct. App. 1998).

¶ 16. The posture of the case before us then is that there exists a continuing offer to dedicate roads for public use. Seventy years of general public access without limitation prevents the revocation of the offer by the successors in interest. The remaining issue is whether the Town can formally accept the dedication more than seventy years after it is initially offered. Upon a formal acceptance by the Town, it becomes liable for the repair and maintenance of the roads and for damages that might result from defects. *Galewski*, 266 Wis. at 14. In its brief, the Town cites numerous cases in other states which allowed acceptance of a dedication even though decades of time had elapsed.

¶ 17. The residents, on the other hand, urge this court to determine that the lapse of time precludes acceptance of the offer to dedicate. They rely on a footnote in *K.G.R.* in which our supreme court observed, "[w]e do not herein hold that an unrevoked offer to dedicate is open for perpetuity. In general, it is subject to acceptance within a reasonable time." *K.G.R.*, 191 Wis. 2d at 459 n.11. In that case, the court allowed the town board to formally accept a dedication after the elapse of twenty-four years, *id.* at 460, but provided no guidance as to what a reasonable time frame might be in different circumstances.

¶ 18. The residents suggest that estoppel should defeat an asserted dedication in circumstances where injury would be suffered by parties that had acted in reliance on a municipality's conduct. Specifically, where a landowner has made improvements and has exercised

exclusive control over the property, the residents argue, the municipality should be estopped to accept dedication.

■

¶ 19. The residents underestimate the quality of the evidence needed to establish an estoppel against a municipality. Estoppel is not applied as freely against the public as against private persons. *City of Jefferson v. Eiffler*, 16 Wis. 2d 123, 133, 113 N.W.2d 834 (1962). "[O]nly when some affirmative action has been taken, or when there has been some great negligence or delay with relation to some matter upon which the parties have a right to rely . . . will [the court] be authorized to apply [estoppel] so as to prevent manifest injustice." *Id.* The evidence must be so clear and distinct that a contrary result would amount to a fraud. *Id.* Here, the record does not disclose any evidence to support a conclusion that a manifest injustice will occur by the Town's acceptance of the dedication of the roads.

¶ 20. Moreover, the case law does not support the residents' position. In *Galewski*, the plaintiff used a portion of the road as a garden and placed obstructions upon it; nevertheless, the court found a valid acceptance of a dedication after the elapse of twenty-six years. *Galewski*, 266 Wis. at 13–14. Significantly, the court refused to apply a theory of estoppel against the village even though it had undertaken no action with respect to the roads during the lapse of time. *Id.* at 15.

¶ 21. We accept the notion that the determination of whether a specific period of time precludes municipal acceptance of a dedication depends on the facts and circumstances of each case. We fail to see any facts and circumstances in this case that would cause us to impose a limitation on the Town's acceptance of the dedication. The documentary evidence discloses that

the residents' landscaping and developed features fall within the fifty-foot expanse of road marked on the original plats. That being the case, individual residents had no right to devote land within the streets to private use as a garden. Even if the dedication was, as the residents contend, for the sole use of the common lot owners, such dedication would give to all current and future owners the use and benefit of a fifty-foot strip of road. Obstructions such as plantings and cultivation are inconsistent with the land's use as a road when, for example, they interfere with the accessibility and maneuverability of emergency vehicles.[4] Because in our view the residents had no right to encroach upon the roadway space in the first instance, they cannot now claim irreparable harm by the removal of the encroachment due to the road improvement project. *Cf. Maas v. Schwaab*, 246 Wis. 102, 105, 16 N.W.2d 380 (1944) (homeowners could not erect gate to subdivision that would bar access to other owners of land in plat, whether or not the road was public or private); *Kennedy*, 244 Wis. at 143 (lot owner estopped to deny dedication against other lot owners where he made agricultural use of land marked as road).

¶ 22. We would be more inclined to rule in favor of the residents if they had relied to their detriment on the Town's refusal to accept the dedication during the last seventy years. For example, if the residents had invested in an upgrade of the roads at issue, the facts and circumstances might then justify a conclusion that the time to accept an unrevoked offer to dedicate had

---

[4] Even the construction proposal offered by the residents recognized that it was in the best interests of the citizens to have the roads widened to improve emergency access for fire, police and rescue and to meet minimum standards for average daily traffic.

expired. In the absence of such a showing, we conclude that the Town may still accept the continuing offer to dedicate the roads for public use.[5]

## 2. Certiorari review of the actions of the Town Board.

¶ 23. The residents assert that the Town Board's action declaring the South Nippersink roads to be public highways, levying assessments, and awarding bids was arbitrary and capricious and should be overturned. They accuse the Town Board of approving an expensive and destructive roadway project without regard to the facts, without regard to the wishes of its citizens, without regard to the tax burdens imposed and without regard to environmental considerations or protection.

¶ 24. WISCONSIN STAT. § 80.17 provides for judicial review under WIS. STAT. § 68.13 of highway orders of the town laying out, altering, widening or discontinuing any highway. Section 68.13 allows aggrieved persons to seek review by way of certiorari. Certiorari lies only to review a final determination. *State ex rel. Czapiewski v. Milwaukee City Serv. Comm'n*, 54 Wis. 2d 535, 539, 196 N.W.2d 742 (1972). We assume for purposes of this issue only that the Town Board has made a final determination. [6]

---

[5] As an alternative argument, the residents contend that they may defeat the dedication through adverse possession. We agree with the Town, however, that Wisconsin law does not permit adverse possession to run against a municipality. *See Klinkert v. City of Racine*, 177 Wis. 200, 188 N.W. 72 (1922).

[6] The Town Board passed the resolution for laying out the roads, but the resolution has not been signed by the Town

¶ 25. A certiorari court is limited to determining whether the board kept within its jurisdiction, acted according to law, acted arbitrarily or unreasonably, and whether the evidence was such that the board might reasonably make the order or determination it made. *State ex rel. Richards v. Leik*, 175 Wis. 2d 446, 455, 499 N.W.2d 276 (Ct. App. 1993).

¶ 26. On this review, we are primarily concerned with the manner in which the Town Board approved the resolution for improving the roads and levying assessments, an action the residents claim was arbitrary and represented the Town's will and not its judgment. In our review we do not weigh the evidence, but rather assess whether there is substantial evidence in the record to support the Town Board's determination. *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). A determination that has a rational basis is neither arbitrary nor capricious. *Id*.

¶ 27. The record before us is replete with evidence of the Town Board's thoroughness and care taken with respect to the road construction project. Public hearings have been held, bids solicited and approvals acquired. The resolution approving the project and awarding the bids is the end result of several years of consideration and planning. We recognize the point made by the residents that the Town Board approved the original plan without discussion or° consideration of the alternative plan they had submitted. Nevertheless, in light of the prior history of the project's development,

chairman, apparently awaiting a final ruling on the private or public status of the roads at issue.

we cannot conclude that such action is the result of the Town Board's will and not its judgment. The action of the Town Board has a rational basis and is affirmed.

*By the Court.*—Judgment reversed.