James M. Povolny and Deborah A. Povolny,
Plaintiffs-Appellants,

v.

James B. Totzke, Dawn M. Totzke, Bremer Bank
National Association, Fleet Mortgage Corpora-
tion, Town of Cady, and All Other Persons Con-
cerned, Defendants-Respondents.

Court of Appeals

*No. 02–3011. Submitted on briefs June 24, 2003.—Decided
July 29, 2003.*

2003 WI App 184

(Also reported in 668 N.W.2d 834.)

853

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas J. Basting, Jr., Jack Y. Perry,* and *Briggs and Morgan, P.A.,* of Minneapolis, Minnesota.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Catherine R. Munkittrick* and *Rodli, Beskar, Boles & Krueger, S.C.,* of River Falls.

On behalf of defendant-respondent Town of Cady, the cause was submitted on the brief of *Robert A. Parsons, Steven B. Goff,* and *Bye, Goff & Rohde, Ltd.,* of River Falls.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.   James and Deborah Povolny appeal a judgment that held the town road, over which their easement by necessity crosses, had been abandoned. As a result of the judgment, the road is discontinued and therefore governed by the easement, which is limited to personal and agricultural uses. The Povolnys contend that the road has been continuously used. Thus, it has not been entirely abandoned and cannot be deemed discontinued. We disagree and affirm the judgment.

## Background

¶ 2.   The Povolnys own a landlocked parcel that abuts James and Dawn Totzkes' land. The Povolnys purchased their land in September 1998, shortly before the Totzkes purchased theirs. The Povolnys used a path that was once a town road to access their property. This path crosses the Totzkes' land, although the Povolnys

855

and their predecessor in interest, Michael Haase, believed it was entirely on their land.

¶ 3. When the Totzkes purchased their parcel, the Town of Cady required they reserve a sixty-six-foot easement for access to the Povolny lot. The easement was recorded on the certified survey map without discussion of whom it was to benefit or for what purpose. The land subject to the easement includes the former town road.

¶ 4. The Povolnys planned to use their lot for various commercial activities, including a motor cross track. When the Totzkes objected, claiming the use was inappropriate under the easement, the Povolnys filed this action seeking a declaration that the easement locus was really an open town road and the Totzkes could not prevent the Povolnys from using it to access their property for any reason.

¶ 5. Following a trial to the court, the court concluded as both a factual and legal matter that the town road had been abandoned as of 1994. Because a five-year period[1] had passed in which the town spent no money on the road, the court concluded that the road was discontinued as a route of travel under Wis. Stat. § 80.32(2). The court then construed the recorded easement, concluding that it was limited to personal and agricultural uses and effectively precluding the Povolnys from using their lot for the commercial enterprises

---

[1] We note that under Wis. Stat. § 80.32(2), the five-year period pertains specifically to town expenditures, not the road's abandonment as a route of travel. Thus, the road could have been entirely *abandoned* before or after 1994. However, the earliest the road could be considered *discontinued* would be after the five-year period of nonexpenditure.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

856

they had planned. The Povolnys appeal the portion of the judgment declaring that the road had been abandoned, but do not challenge the court's construction of the easement.

## Standard of Review

¶ 6. The parties disagree as to the appropriate standard of review. We are faced with a mixed question of fact and law. The trial court made certain findings regarding the road's condition and use. These are factual findings that we leave undisturbed unless they are clearly erroneous. WIS. STAT. § 805.17(2). However, whether these facts fulfill the statutory requirements is a question of law we consider de novo. *See Ide v. LIRC*, 224 Wis. 2d 159, 166, 589 N.W.2d 363 (1999).

## Discussion

¶ 7. WISCONSIN STAT. § 80.32(2) states in relevant part that "any highway which shall have been entirely abandoned as a route of travel, and on which no highway funds have been expended for 5 years, shall be considered discontinued." The parties agree that no highway funds have been expended for five years. Thus, the only question for us to resolve is whether, as a matter of law, the road was entirely abandoned as a route of travel.

¶ 8. Wisconsin courts have previously interpreted the meaning of "entirely abandoned." *Lange v. Tumm*, 2000 WI App 160, ¶ 7, 237 Wis. 2d 752, 615 N.W.2d 187. In *State ex rel. Young v. Maresch*, 225 Wis. 225, 231–32, 273 N.W.2d 225 (1937), the supreme court explained

that if a highway or road "was traveled by such of the public that had occasion to use it," that is sufficient to keep the roadway from being entirely abandoned. *Lange*, 237 Wis. 2d 752, ¶ 7. In other words, the "key inquiry is whether the highway has remained open to all who had occasion to use it." *Id.*, ¶ 10.

¶ 9.  The court here emphasized two factors in determining that the road had been entirely abandoned:  The roadway was overgrown and difficult or impossible for vehicles to travel without damage and members of the public sought permission to use the road. The Povolnys contend it was error for the trial court to consider these factors. However, we believe these considerations underpin the "open to all" inquiry and that, by considering these two factors, the trial court implicitly and correctly applied the *Lange* standard.

## Condition of the Roadway

¶ 10.  We leave factual findings undisturbed as long as they are supported by the record. *Dunn County v. Judy K.*, 2002 WI 87, ¶ 38, 254 Wis. 2d 383, 647 N.W.2d 799. The trial court ultimately determined the roadway was impassible by vehicles. Supporting this, the court heard testimony from Haase, a hunter named Ed Swenson who had used the property prior to the Povolnys' purchase, and the Povolnys' neighboring landowner Jae Anderson.

¶ 11.  Haase testified that at some point before the Povolnys purchased his land:

> When I would inspect the property after the saplings had grown up to a point where it wasn't really . . . feasible to go through . . . I would drive in on the road

and get off the county road and then walk down [the town road]. . . . There was a[n] area that you could drive partially down . . . .

Similarly, Anderson noted that the roadway is "grass in the middle, grass grown over lots of little trees."

¶ 12.   Swenson testified that when he would hunt on the Povolny lot, he sometimes used the roadway to access the parcel. However, he noted, "we could drive down it to a point . . . there was a tree that had fell across the road, and we didn't remove it. We just stopped there."

¶ 13.   The real estate agent showing the Povolnys the property in 1997 indicated he had been able to drive his car down the roadway, but noted it was weedy. Finally, the former Cady patrolman noted that in 1998, he went to clear the area as a sort of favor to the Totzkes—the town would clear the easement since it had required the Totzkes to reserve the section. The patrolman stated that he had to remove brush and trees from the roadway before he could place crushed rock on the path.

¶ 14.   The court also viewed a photograph of the roadway dated April 1997 by the camera's dating system.[2] Although the Povolnys invited us to interpret this

_____

[2] Haase, Swenson, and Anderson provided adequate testimony from which the trial court could have concluded the roadway was impassible in 1994. The testimony about the road's condition in 1997 and 1998 enforces that testimony and, in any event, there is sufficient evidence from which the trial court could conclude that the roadway was abandoned before the Povolnys bought it.

photograph ourselves,[3] we believe it is simply a graphic reinforcement of the testimony provided, showing saplings growing in the easement proper.

¶ 15.   From the evidence concerning the road's condition, the court concluded that it was not fit for vehicular travel. The Povolnys argue that vehicular traffic need not be the only traffic for the road to remain a route of travel. However, the inquiry is whether the road remained "open to all who had occasion to use it." The fact that at least Haase and Swenson testified that they would sometimes walk the route after driving part of it because they could not progress with their vehicles leads us to conclude that the road was not open as a matter of law because members of the vehicle-driving public that had occasion to use the road could not.

### Permissive Use

¶ 16.   The trial court also relied on the fact that some individuals sought permission to use the road. We note at the outset of this discussion that had any of the property owners purposely obstructed the roadway, this would be a more difficult inquiry. It is self-evident that a private landowner has no right to treat a public highway as his or her own private roadway so as to force abandonment. However, there is no evidence that this happened and, indeed, Haase indicated no one had ever been denied access on the roadway during the time he owned the property from 1982 to 1998.

¶ 17.   The trial court heard testimony that individuals would seek permission to use the Povolny lot.

---

[3] *See Cohn v. Town of Randall*, 2001 WI App 176, ¶ 7, 247 Wis. 2d 118, 633 N.W.2d 674 (Where the evidence is documentary, the appellate court is not bound by inferences drawn therefrom by the trial court.).

Although this does not directly address the abandonment issue, the evidence indicates that the road was perceived as a private driveway. Swenson testified that he always thought it was a driveway. Haase and the realtor both believed that as well based on the location of a cattle fence off the roadway.[4] Thus, when individuals sought permission to use the land, by extension they asked for permission to use the road.

¶ 18. A private owner cannot force the public to abandon a roadway. He or she cannot, for example, require that the public seek permission to traverse and thus transform a road from public to private.[5] However, the public's perception of the roadway's status is a proper, but not dispositive, consideration in determining whether a public way has been abandoned. Here, the public that had occasion to use the roadway demonstrated that it considered the road's public nature abandoned because it sought permission to use the road. The trial court properly considered this evidence by ultimately determining that the road no longer remained open to the public that had occasion to use it.

### Subsequent Use of the Roadway

¶ 19. The Povolnys spend much time detailing how they, along with their friends and others, have used

---

[4] This should not be mistaken for Haase treating the roadway as his own and restricting its use so as to force abandonment; Haase testified that he never prevented anyone's use of the road.

[5] That the Totzkes apparently barricaded the route is irrelevant because the court determined the road had been abandoned before the Totzkes bought their land. Thus, the Totzkes did not force the public to abandon the road.

the road since they purchased the lot. This is irrelevant. The court determined that the road was discontinued as of 1994, and resuming use of the road does not make it unabandoned. Even if that use were a consideration, once the Totzkes bought their lot and recorded the easement, it would be impossible for us to separate use of the "road" from use of the easement.

¶ 20. The Povolnys also interject a public policy argument regarding the landlocked nature of their parcel should the road be considered discontinued. The parcel is not currently landlocked; the Povolnys have an easement by necessity for accessing their land.[6]

¶ 21. The trial court heard testimony regarding the condition of the former town road, concluding it was not open to vehicular travel. The court also heard testimony that members of the public treated the roadway as private, seeking permission when they wished to use it. Because of this, the court reasonably concluded that the roadway was not open to all members of the public who had occasion to use it. With the *Lange* standard unfulfilled, the roadway was abandoned as a route of travel. Coupled with the fact that highway funds had not been expended on the roadway for at least five years, the court properly categorized the road as discontinued, and the easement controls the use of the land.

*By the Court.*—Judgment affirmed.

---

[6] We note that the record contains letters from the Povolnys' attorney to owners of adjoining lots. In these letters, the Povolnys attempt to buy access easements, claiming that the parcel became landlocked in 1979.