COURT OF APPEALS
DECISION
DATED AND FILED

June 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2023AP1728**

STATE OF WISCONSIN

Cir. Ct. No.  2022CV1003

IN COURT OF APPEALS
DISTRICT II

---

GLENN BLUEMER AND CATHERINE BLUEMER,

    PLAINTIFFS-RESPONDENTS,

  V.

BRIAN YOUNG,

    DEFENDANT-APPELLANT,

DANIEL ROSZKOWSKI, DON BUFTON AND THE BUFTON FAMILY IRV TRUST, HELEN JULIET LENA-ROSZKOWSKI,

    DEFENDANTS.

---

APPEAL from an order of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Reversed and cause remanded.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Brian Young appeals from an order of the circuit court granting summary judgment in favor of Glenn Bluemer and Catherine Bluemer in the parties' dispute over whether all members of a six-unit condominium have riparian rights and lake access.  Because the condominium documents, read as a whole, are most reasonably interpreted as showing that the "riparian area" in dispute is a common element owned by all unit owners, and because an easement for lake access depicted in those documents is not invalid under WIS. STAT. § 30.133(1) (2021-22),[1] we reverse and remand.

## BACKGROUND

¶2     Young owns Unit 5 of the Dober Hillcrest Shores Condominium on Eagle Lake ("the Condominium").[2]  Consisting of six residential units and certain common elements, the Condominium was established in 2003 when Frederick F. Dober and Mary Louise Dober ("Declarants") filed and recorded the Declarations of Condominium Ownership and of Easements, Restrictions and Covenants for Dober Hillcrest Shores ("Declarations").  A legal description and plat of survey of the Condominium is attached to the Declarations and incorporated therein by reference.[3]  This plat shows, among other things, the six units, an easement across

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Young purchased this property after the commencement of the lawsuit and was substituted as a defendant in place of the initial owner.  That he was not an original party is irrelevant to this appeal.

[3] We note that "[i]f there is any conflict between any provisions of a declaration and provisions of a condominium plat … the provisions of the declaration shall control."  WIS. STAT. § 703.30(4).

Unit 3 for "PEDESTRIAN ACCESS TO EAGLE LAKE FOR THE BENEFIT OF UNITS 1, 2, 4, 5 & 6," and an area between a "MEANDER LINE" and the high water mark of Eagle Lake, which will be referred to as "the riparian area":



¶3    In a second figure, the plat shows, in parentheses, the area (in square feet and acres) of each of the six units. Beneath the area in parentheses[4] for Unit 3—which, along with Unit 4, is closest to the lake—the language "PLUS 9183 S.F. MEANDER TO HIGH WATER" appears. To the left and above the area of Unit 4,

---

[4] While the area measurements for the units are in parentheses, the "plus" language is not.

there is another "plus" notation, "PLUS 12212 S.F. MEANDER TO HIGH WATER," as shown below (arrows added by Young):



The plat also includes a note stating that "[a]ll areas not designated as limited common area or part of the condominium unit pursuant to the declarations, of this condominium plat, is common area."

¶4      In the language of the Declarations there are multiple references to two piers that were in existence at the time the condominium was formed.  For instance, Section 1.01 states:  "Included in the common elements and limited common elements are all of Declarants' interest in and to the roads, the piers on Eagle Lake, walks and grounds shown on the condominium plat not dedicated to the Town of Dover and Racine County."  Section 2.07 defines "Common Elements"

as "All of the condominium except the units," including "play areas, the piers on Eagle Lake, parks and recreational facilities." Finally, Section 8.01(d)7. provides that each unit owner is "allowed to keep one (1) boat or other water craft in the water at the Association's piers."

¶5 The Bluemers own Unit 3 of the Condominium. In 2022, they filed suit against the owners of Units 1, 2, 5, and 6, seeking a declaration that the owners of Unit 3 own the riparian area adjacent to that unit (in other words, that that riparian area is part of Unit 3) and seeking to terminate the pedestrian access easement over Unit 3. The defendant unit owners responded with a counterclaim asserting that the riparian area at issue is a common element of the Condominium and seeking a declaration that all members have access to Eagle Lake pursuant to the easement. Unlike the Bluemers, the other unit owners (the defendants) did not move for summary judgment.

¶6 After a hearing on July 25, 2023, the circuit court granted the Bluemers' motion for summary judgment with respect to both the riparian area and the easement. First, the court denied the defendants' "late request" to adjourn the hearing so that they could submit an affidavit from one of the Declarants who originally created the condominium. The defendants had submitted an offer of proof consisting of a draft of this affidavit, which stated that it was the Declarants' intent that the riparian area "was to be a Common Element for the benefit of all Unit Owners." The court determined that such an affidavit would be irrelevant. It agreed with the Bluemers that the "plus language"—that language on the plat below Unit 3 that "clearly says, 'Plus 9,183 square feet meander to high water'"—is dispositive. The court "assum[ed] the plus adds that [area] to Unit 3" and stated that "because the plat says that and because the declarations say the unit is described or delineated in [the] plat … then Unit 3 extends to the high water mark" for its western border.

5

The court went on to explain its view that the other "plus language" on the plat (near Unit 4) indicated that "the western lines of Unit 3 and Unit 4 extend to the high water mark." Given that the riparian area adjacent to Unit 4 is actually smaller than the riparian area adjacent to Unit 3, the court stated that "it's probably [2,212 square feet] for Unit 4" rather than the 12,212 square feet in the Unit 4 "plus language."

¶7 Next, the circuit court turned to WIS. STAT. § 30.133. It noted that "an owner of riparian land can't grant the easement to a non-riparian owner" under the statute. Thus, the court determined that the defendants had no riparian rights or access to Eagle Lake "as condominium ownership individuals or part of the association." The court further held that "the easement was improper in the beginning because it cannot grant riparian rights and the easement's purpose was in fact apparently to access an existing pier on Eagle Lake." Finally, the court commented that the fact that the easement did not extend to the high water line but only to the meander line meant that the easement would not allow other unit owners to "put a dock at the high water mark of Eagle Lake," which it deemed a further reason for extinguishing the easement.

¶8 Young appeals, asserting that the Declarations are susceptible to multiple reasonable interpretations and therefore that summary judgment was inappropriate without consideration of extrinsic evidence. He also asserts that irrespective of the rights to the riparian area, the easement is valid under WIS. STAT. § 30.133 and should not have been terminated.

## DISCUSSION

¶9 We review a circuit court's grant of summary judgment de novo using the same methodology used by the circuit court. *Konneker v. Romano*, 2010 WI 65, ¶22, 326 Wis. 2d 268, 785 N.W.2d 432. Summary judgment is appropriate only

when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2). A court "should not grant summary judgment 'unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy.'" *Konneker*, 326 Wis. 2d 268, ¶22 (citation omitted).

¶10 Under Wisconsin law, "a condominium is a form of ownership" pursuant to which each unit owner has exclusive ownership of his or her unit along with an undivided interest in the common elements. *See* WIS. STAT. §§ 703.37; 703.05; 703.04. The plat and declarations required to form a condominium constitute a written document affecting land, the construction of which is a question of law that we review independently without deference to the circuit court's interpretation. *Kaitlin Woods Condo. Ass'n v. North Shore Bank, FSB*, 2013 WI App 146, ¶10, 352 Wis. 2d 1, 841 N.W.2d 562. As when we construe a deed or a contract, our purpose is to ascertain the parties' intent. *Konneker*, 326 Wis. 2d 268, ¶26. If the language of the declarations and plat is unambiguous, it will be enforced as written without any consideration of extrinsic evidence of the Declarants' intent. *See Kaitlin Woods Condo. Ass'n*, 352 Wis. 2d 1, ¶10. If, however, it is ambiguous—meaning it is "reasonably or fairly susceptible of more than one construction," *see Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990)—a court should consider extrinsic evidence in determining the parties' intent. *Konneker*, 326 Wis. 2d 268, ¶26; *see also Cohn v. Town of Randall*, 2001 WI App 176, ¶¶12-13 & n.3, 247 Wis. 2d 118, 633 N.W.2d 674 (holding that when a plat was ambiguous because the theories advanced by both sides were reasonable, the court was "obligated" to consider other evidence of the grantor's intent). Such extrinsic evidence could include statements from the Declarants regarding their intent in forming the condominium or evidence of the parties' conduct before and

after the Declarations were filed.  *See **Kernz v. J.L. French Corp.***, 2003 WI App 140, ¶10, 266 Wis. 2d 124, 667 N.W.2d 751.

¶11     Here, the Bluemers point to one thing supporting their interpretation: the "plus language" below Unit 3 on the plat, which they say is an unambiguous statement that Unit 3 includes the riparian area adjacent to it between the high water line and the meander line.  In isolation, the "plus language" could reasonably be interpreted as they suggest, and Young concedes that Unit 3's western border being the high water line is one reasonable interpretation of the Declarations and plat incorporated therein.  But that language must be considered in the context of the Declarations in their entirety.  *See **MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.***, 2015 WI 49, ¶43, 362 Wis. 2d 258, 864 N.W.2d 83 ("[P]rovisions that are unambiguous standing alone may be ambiguous in the context of the whole contract.").  Young points to numerous provisions in the Declarations and incorporated plat supporting his interpretation, which is that the western boundary of Unit 3 is the meander line and that the riparian area is a common element.  We agree that Young's is another reasonable interpretation of those documents—indeed, the most reasonable based on the Declarations as a whole—and thus, we conclude that summary judgment in favor of the Bluemers is inappropriate.

¶12     First, the "plus language" itself raises some questions.  The areas in the two "plus" notations in the vicinity of Units 3 and 4 do not correlate to the riparian areas between the meander line and the high water line adjacent to Units 3 and 4.  While it may be that the 12,212 square feet in the plus language near the depiction of Unit 4 is a clerical error as the Bluemers suggest (and the circuit court apparently believed[5]), it is also plausible that this number reflects the entire riparian

_____

[5] The circuit court appears to have engaged in pure speculation on this point.

area adjacent to both Units 3 and 4—which would be more reasonable if the riparian areas were common elements than if they were intended to be added to Units 3 and 4.

¶13 Even more persuasive is the language in multiple sections of the Declarations. Section 1.01 states that the "walks and grounds shown on the condominium plat not dedicated to the Town" are common elements. Section 2.07(b) states that the common elements include "[t]he grounds, open space and gardens not part of the delineated lots" along with "play areas, the piers on Eagle Lake, [and] parks and recreational facilities." The riparian area (along with the deck depicted on the plat) seems to belong in these categories; in fact, the riparian areas adjacent to Units 3 and 4 are the only areas other than the road (which is listed separately as an additional common element) that is not clearly a part of a delineated lot. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶37, 363 Wis. 2d 699, 866 N.W.2d 679 ("Interpretations that give reasonable meaning to each provision in the contract are preferred over interpretations that render a portion of the contract superfluous.").

¶14 The fact that the Declarations explicitly include the piers as common elements is important for another reason. Given that WIS. STAT. § 30.12 provides that only riparian owners have the right to place a pier on navigable waters, *State v. Bleck*, 114 Wis. 2d 454, 466-67, 338 N.W.2d 492 (1983), it is more reasonable to interpret the Declarations as establishing the riparian area as a common element owned by all unit owners such that the Association (of which all owners are a part)

can place and maintain the piers as explicitly stated in Section 8.01(e), titled "Pier Rights."[6]

¶15 Finally, the Declarations are to be "liberally construed," according to Section 14.11, "to effectuate [their] purpose of creating a uniform plan for the development and operation of a first class condominium residential/recreational development." The Declarants provided an easement so that all unit owners could have access to Eagle Lake and provided the right of each unit owner to keep a boat in a slip on one of the Condominium's piers. Indeed, the point of forming a condominium in the first place seems to have been to ensure that the inhabitants of the six single-family homes making up Dober Hillcrest Shores Condominium could enjoy lake recreation; otherwise, each unit could just as easily exist separately without connection to any other. Recreational options for all unit owners would be enhanced with ownership of the riparian area at issue as a common element. We conclude that Young, as the party opposing summary judgment, has demonstrated that summary judgment in the Bluemers' favor is not warranted.

¶16 To the extent the circuit court determines that the riparian area is indeed a common element of the Condominium, WIS. STAT. § 30.133 is not applicable and provides no basis for extinguishing the easement depicted in the plat. In that case, the easement over Unit 3 provides access to the riparian area owned by all unit owners as a common element; the easement would not constitute a "conveyance [of] any riparian right in the land to another person." *See* WIS. STAT. § 30.133(1). But even if the circuit court somehow deems the riparian area at issue to be solely a part of Unit 3, the pedestrian access easement is not void as a matter of law. While the statute prohibits the granting of most riparian rights to non-owners

---

[6] The Declarations refer to the piers numerous times as "the Association's piers."

of riparian land, it explicitly allows a riparian landowner to grant an easement "for the right to cross the land in order to have access to the navigable water." § 30.133(1). That is the express purpose of the easement here: to provide "PEDESTRIAN ACCESS *TO EAGLE LAKE* FOR THE BENEFIT OF UNITS 1, 2, 4, 5 AND 6." (Emphasis added.) Moreover, the easement does not end at the meander line but rather extends into the riparian area;[7] according to the plat, it terminates in a "deck area," which, according to the Bluemers' complaint, was a stairway and pier in 2003. Even though this pier (presumably one of the two explicitly described in the Declarations as common elements) apparently no longer exists, the easement could still provide access to Eagle Lake for uses such as swimming, kayaking, etc. The language describing the purpose of the easement is not limited to access to a pier but rather it provides for "ACCESS TO EAGLE LAKE."

¶17    Finally, we address the Bluemers' assertion that "[o]nly the interest of Mr. Young as a Unit owner will be affected by the decision in this case." They cite *Raasch v. City of Milwaukee*, 2008 WI App 54, ¶16, 310 Wis. 2d 230, 750 N.W.2d 492, in which this court stated that "a party who does not appeal an adverse lower court decision is not entitled to the result gotten by those who *did* appeal successfully." But this is not a case like *Raasch*, where plaintiffs in a disability benefits case elected not to appeal a circuit court order dismissing their claims and then sought relief under WIS. STAT. § 806.07 in a separate case. *See Raasch*, 310 Wis. 2d 230, ¶14. It is instead one in which "[a] person may be legally affected by a judgment, … by reason [of] being so situated that his own rights or obligations are

---

[7] This could be viewed as additional evidence supporting Young's interpretation that the riparian area is a common element; the easement is sufficient to allow all unit owners access to the riparian area and need not extend farther because all unit owners own that area.

conditioned in one way or another by a judgment involving another person." RESTATEMENT (SECOND) OF JUDGMENTS 4 Intro. Note (AM. L. INST. 1982). Our reversal of the circuit court's grant of summary judgment with respect to the riparian area "places the entire controversy again before the [circuit] court," and, to the extent the court determines that the riparian area is a common element, it will be a common element owned by all of the unit owners. *See* ***Gibson v. Streeter***, 241 Wis. 600, 603-04, 6 N.W.2d 662 (1942) (holding that reversal of judgment against one defendant necessarily required judgment against other defendant for contribution to be reversed and remanded). Our decision reversing summary judgment with respect to the easement does not bestow a benefit on the unit owners who did not appeal; it deprives the Bluemers from enforcing the declarations in the summary judgment order that we have declared invalid.

## CONCLUSION

¶18    For the reasons explained above, we reverse the circuit court's grant of summary judgment for the Bluemers on the access easement over Unit 3, which is not invalid as a matter of law under WIS. STAT. § 30.133(1). We also reverse the court's grant of summary judgment on the western boundary of Unit 3 and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.