JOSIAH A. NOONAN and PETER McNAB, Complainants and Appellees,

*vs.*

JOHN J. ORTON, Defendant and Appellant.

APPEAL IN EQUITY FROM THE CIRCUIT COURT OF MILWAUKEE COUNTY.

A lease of water to be taken at a place designated on the land of the lessor, conveys to the lessee an interest in the land of the lessor, and covenants contained in such lease on the part of the lessor in reference to such water power, are covenants that run with the land, and bind the assignee or grantee of the lessor with notice.
Where A. gives to B. a lease of water to be taken at a place designated on the land of A., containing several covenants in regard to such water power, and afterwards sells the land subject to such lease to C., A. is not a necessary party to a bill brought by B. against C. for specific performance of such covenants contained in the lease from A. to B.

ON the 19th day of January, 1855, the complainants filed their bill of complaint against the defendant, to which said bill on the 22d day of February, 1855, an amendment was filed. On the 20th day of April the defendant filed his demurrer to the amended bill of complaint, which demurrer, after argument by counsel for the parties, was overruled by the Circuit Court.

This appeal is taken by the defendant from the order overruling the demurrer.

*E. Mariner & H. S. Orton*, for appellant.

*J. Downer & J. E. Arnold*, for appellees.

The facts involved in this case are sufficiently stated in the opinion of the court.

*By the Court,* WHITON, C. J. The bill filed in this case as it was amended, states in substance, that Erastus B. Wolcott, Talbot C. Dousman, Zelotus A. Cotton and Sandford D. Cotton, were seized in fee of certain lands, and being so seized in the year 1850, entered into an agreement with McNab, one of the

complainants, and one John E. Cameron, since deceased, by which agreement Wolcott, Dousman and the Cottons agreed to sell to McNab and Cameron, certain portions of the land above mentioned, and also to lease to the said Cameron and McNab two thousand cubic feet of water per minute, to be drawn from a dam erected on the land of the said Wolcott, Dousman and the Cottons, across the Milwaukee River, and to be used by the said McNab and Cameron, in driving the machinery of a paper mill, which they were to build upon the lots so sold to them; that by the agreement, a deed was to be made of the lots on the payment of the purchase money, and the said McNab and Cameron were to erect a paper mill thereon; that the lease of the water was to be renewable for ninety-nine years or forever, and was for a certain rent in the said agreement specified; that Cameron died before the mill was erected, and that by an arrangement between the parties, the said Noonan took his place, and together with McNab, erected a paper mill on the lots agreed to be conveyed by the said agreement, and in pursuance of the said agreement the said Wolcott, Dousman and the Cottons conveyed in 1850, the lots, or two of them, on which the paper mill stands, and also made in January, 1851, a lease of the water herein afterwards mentioned; that the agreement has been destroyed, and that on account of its loss, the complainants cannot set it out verbatim, but they state that it was an agreement by which Wolcott and the owners of the land and water power, agreed to sell the lots and convey the same to be used for the purpose of erecting a paper mill thereon and carrying on the paper business, and to lease the water to be used in manufacturing paper and driving the machinery in said mill; that said vendees and lessees agreed to pay a stipulated sum of money for said lots and the use of the water to be used for the purposes aforesaid: that under and in pursuance of said agreement said mill was built by the complainants, and the lots conveyed to them, and that on or about the 8th of January, 1851, the said Wolcott, Dousman and the Cottons, under their hands and seals, made a lease, by which in consideration of the rents reserved, demised and leased to the complainants one thousand cubic feet of water per minute, to be taken from said dam and conveyed by them in a flume constructed for the purpose, to the paper mill of the com-

Noonan and McNab vs. Orton.

plainants, located on a part of lots two, three and four, in block one, in the village of Humboldt, to have and to hold the said one thousand feet of water per minute, to the said complainants for the term of four years from the date of said lease, yielding the yearly rent of two hundred dollars, in semi-annual payments; that it was further agreed in and by said lease, that the said lessors should, within a reasonable time, raise the said dam to the height of sixteen feet, and during the continuance of the lease to keep the dam and flume conveying the said water to the complainants' mill in good repair; that until said dam should be raised to the height of sixteen feet, the complainants should have the right to draw an amount of water equivalent to one thousand cubic feet per minute, discharged under a head of sixteen feet; that it was further agreed in and by said lease, that the complainants, at any time during said term of four years, upon signifying their wish in writing to said lessors, might have an additional amount of water, to be drawn and used as aforesaid, not exceeding one thousand feet per minute, provided that each additional amount should be specified in the written notice, the complainants to pay for such additional water, fifty dollars for each and every one hundred cubic feet of water per minute; that there was a covenant in the lease on the part of the lessors, to renew the same at the expiration thereof, for the term of ninety-nine years, said lessees to pay three hundred dollars yearly rent in case of renewal, for one thousand cubic feet of water per minute; but in case the complainants should elect to take (as by the provisions of the lease they might) an additional amount of water, not exceeding one thousand cubic feet of water per minute, the said lease was also to be extended for such additional amount so elected to be taken, for which the complainants were to pay the sum of fifty dollars annually, per every such additional one hundred cubic feet per minute, which was to be paid semi-annually; that it was further agreed in and by said lease, that until said dam should be raised to the height of sixteen feet, the complainants should have the right to draw from said dam so much water as would be equivalent to one thousand cubic feet per minute, under a head of sixteen feet; that the lease was recorded in the office of the register of deeds for Milwaukee county; that the said Wolcott, Dousman and

the Cottons, sold and conveyed by deed to the defendant all their right, title and interest in and to said lands and water power; that the defendant had actual knowledge of said lease, and took said deed of conveyance subject thereto, and with the understanding that he should carry out and fulfill the requirements of the same; that said defendant has, since he received the conveyance of said land and water power, collected and received rents under said lease; that the complainants have expended more than twelve thousand dollars in erecting and putting in operation a paper mill, to drive the machinery in which said water was leased; that after the said defendant had received the conveyance of said land and water power, the complainants notified him in writing, of their wish and election to take one thousand additional cubic feet of water per minute from said dam, from the time of service of such notice, pursuant to the provisions of said lease, and on the terms therein mentioned; that for several weeks and months during the summer and fall of the year 1854, the complainants did not have, and could not have and obtain from said dam, a quantity of water equal to one thousand cubic feet of water per minute, under a head of sixteen feet; that said dam has never been raised to the height of sixteen feet, but the said lessors and the said defendant have neglected to raise the same to said height, and the same is now only raised to the height of about twelve feet; that said defendant has not, since he purchased said water power, kept said dam in good repair, but has failed to do so, and thereby much water which otherwise might have been used, has been wasted; that said defendant refuses to permit, and declares that he will not permit, the complainants to have and use, pursuant to said agreement, said additional one thousand cubic feet of water per minute, and gives out and pretends that he is under no obligation to carry out the agreement of the said Wolcott, Dousman and the Cottons in respect to such additional one thousand cubic feet of water per minute, and that the covenants and agreements in said lease are personal and not binding on him, and that he is not bound to raise said dam to the height of sixteen feet; that on the 22d day of December, 1854, the complainants gave notice in writing to said defendant, that they wished said lease extended for the term of ninety-nine years, pursuant to its provisions; that the said de-

fendant has repeatedly shut off the water from the flume conveying the same to the complainants' paper mill, and declares that the covenants of renewal in' said lease are not binding on him, and that the complainants have no right whatever to any water from said dam; that he will not permit them to have it, under the provisions of said lease, and will not renew or extend the same; that on the 13th day of January, 1855, and before the commencement of this suit, the complainants caused to be made out, and shown to the defendant, a draft of a lease or extension of said lease, and demanded of him to sign and execute the same, which he refused to do; that at the time of the purchase of said premises and water power by said defendant, the complainants were in possession of said paper mill, and using the water from said dam to drive the machinery in the same under said lease, and said defendant knew of such possession, and of the use of said water power under said lease at the time of said purchase, as the complainants believe and charge, and has since received rent of the complainants on said lease; that the complainants have paid all the rent past due on the lease, or have offered to pay the same, and if there is any rent past due on said lease, the defendant has refused to receive it as rent; that the complainants gave, or caused to be given to the said lessors, a notice that they wished to have said lease extended or renewed for ninety-nine years, which notice was in writing and given by delivery, previous to the first day of January, 1855, to all the lessors, except Sanford D. Cotton, who had left the state.

The bill prays that the defendant be required to make in due form of law to the complainants a lease of two thousand cubic feet of water per minute for the term of ninety-nine years, to be taken from the said dam, and to be used in driving the machinery in said paper mill, with a proviso in said lease to be inserted, that until said dam is raised to the height of sixteen feet, the complainants shall have the privilege of drawing from said dam, so much water as shall be equal to two thousand cubic feet of water per minute under a head sixteen feet, and that the defendant may be compelled to raise said dam to the height of sixteen feet, and to carry out and fulfill the covenants in said lease made by the said lessors, so far as they relate to the re-

newal or extension of said lease, the raising of said dam to the height of sixteen feet, and keeping it in repair, and so far as they relate to the complainants' being supplied with the water leased or agreed to be leased to them, prior to other persons; and that a clause giving the complainants priority in the use of said water over all others, be inserted in said lease for ninety-nine years; and that the defendant may be enjoined and restrained by injunction from hindering the complainants from drawing water from said dam equivalent to two thousand cubic feet per minute under a head of sixteen feet, and from shutting off the water from the said paper mill or the flume connected with the same, except for the purpose of repairing the said dam; also for general relief.

To certain parts of the bill a demurrer was interposed by the defendant. The parts of the bill which are demurred to, are those which charge that the defendant, as assignee of Wolcott, Dousman and the Cottons with notice, is bound, by their covenants contained in the said lease to the complainants, to renew said lease and to grant an additional one thousand feet (of water), and to the relief prayed for by reason thereof. The cause of demurrer assigned is, that there is no interest in lands conveyed in said lease, sufficient to carry the covenants therein contained, and that the covenants in said lease are only the personal covenants of the said lessors, and not binding on the defendant. The defendant also demurred to so much of the bill as charges that the defendant, by reason of being the grantee of Wolcott, Dousman and the Cottons, is bound to raise said dam to the height of sixteen feet, and to the relief prayed for by reason thereof. The cause of demurrer assigned is, that there was no estate in lands created or passed by said lease made by said Wolcott, Dousman and the Cottons, and that the covenants contained therein appear by the bill to have been broken by the said Wolcott, Dousman and Cottons long before the sale of the said premises to the defendant, and to have been a mere right of action against them in the complainants at the time of said sale. The defendant also demurred to the bill, and to the relief prayed, and assigned the following cause of demurrer, to wit: that it does not appear from said amended bill that the defendant had any notice of such agreement in writing; but it does

appear that the same was not made with the said complainants or their privies, and it further appears that such agreement was fully consummated, given up and discharged at the time of the execution of said instrument in writing by said Wolcott, Dousman and Cottons to the said complainants.

The court below overruled this demurrer. From this decision the appeal in this case was taken.

Admitting that the complainants cannot go behind the lease which was made to them by Wolcott, Dousman and the Cottons, and rely upon the agreement set forth in the bill, between the lessors and McNab and Cameron, we think that the bill discloses substantial grounds for equitable relief.

It was contended by the counsel for the defendant, that the lease of Wolcott, Dousman and the Cottons was of *water* merely; that no interest in land was demised by it, and that consequently the defendant, as the grantee of the land, could not be bound by the covenants contained in it. A careful consideration of the lease will, we think, lead to a different conclusion. The lease is of one thousand cubic feet of water per minute from the water power of the lessors in the village of Humboldt, to be taken from the dam in the said water power, and conveyed by the lessors in a flume to the paper mill of the lessees. This cannot be regarded as a lease of water distinct from land. The water was to be taken from the dam of the lessors, and to be conveyed in a flume to the complainants' mill.

The right which the complainants acquired by this lease could not be enjoyed without vesting in them an interest in the dam and water power of the lessors. It gave them, therefore, an interest in the lessor's land. We are well aware of the principle that according to the common law, by a grant of water merely the sale will not pass. *Co. Litt.* 4 *b; Com. Dig. Grant, (E.* 5.)

But this is not a lease of this description; it is a lease of water to be taken at a place designated on the lessor's land, and as clearly conveys an interest in land as would a right of way over the same land.

It was held in the case of *Nicholas vs. Chamberlain* (2 Croke R. 121), that if one erect a house, and build a conduit thereto in another part of his land, and convey water by pipes to the house and afterwards sell the house with the appurtenances, excepting

the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house, because it is necessary, *et quasi*, appurtenant thereto; and he shall have liberty by law to dig in the land for amending the pipes, or making these anew as the case may require.

We are of opinion, for the reasons above given, that the lease in question, conveyed to the complainants an interest in the lessor's land. It follows conclusively, that the conveyance of the same land subsequently to the defendant, with actual knowledge of the lease, was subject to the easement created by it.

The counsel for the defendant also contended that the covenant for a renewal of the lease was void for want of consideration. We think this position cannot be maintained. *Platt on Leases*, 735, and the cases therein cited.

This lease was sealed by all the parties to it, and the covenant to renew was in the usual form. We are also of opinion that the covenant to renew the lease ran with the land, and bound the defendant as the assignee of the reversion. *Tanner vs. Flanend*, *Cases in Chancery*, 259; *Platt on Leases*, 731.

Objection is also taken in this court that the bill is defective for want of proper parties. This supposed defect of parties arises from the fact that Wolcott, Dousman and the Cottons, the lessors of the complainants, and the grantors of the defendant, are not before the court.

We do not think that they are necessary parties to the suit, as they have parted with all their interest in its subject matter. No decree which can be made in the case, will affect them in any way. This objection must therefore be regarded as untenable.

It follows, from the view which we have taken of the bill in this case, that the order of the court below must be affirmed.