GOGOLEWSKI and others, Appellants, v. GUST and others, Respondents.*

*April 5—May 1, 1962.*

* Motion for rehearing denied, with $25 costs, on June 29, 1962, WILKIE, J., taking no part.

For the appellants there was a brief by *Patri, Nolan, Crane & Engler,* attorneys, and *Morris Warzinik* of counsel, all of Oshkosh, and oral argument by *Hibbard H. Engler.*

For the respondents there was a brief by *Henry P. Hughes, R. Curtis Laus,* and *Allen & Sitter,* all of Oshkosh, and oral argument by *Mr. Hughes.*

CURRIE, J. The issue on this appeal is whether the platted 50-foot strip is a private roadway or public highway. The case is unique in that neither the town board nor any owners of land within the plat are asserting that the roadway is a public highway, but this contention is being advanced by owners of land without the boundaries of the plat.

In order for defendants to prevail in this lawsuit the evidence must show that a public highway was established by common-law dedication. This is because the town board never took any official action pursuant to ch. 80, Stats., to establish a town highway over the roadway in question. The uniform rule recognized in Wisconsin and elsewhere, with respect to the requisites of such a common-law dedication, was succinctly stated in *Knox v. Roehl* (1913), 153 Wis. 239, 243, 140 N. W. 1121, and reasserted in *Galewski v. Noe* (1954), 266 Wis. 7, 12, 62 N. W. (2d) 703, as follows:

" 'The essential requisites of a valid common-law dedication are that there must be an intent to dedicate on the part of the owner and an acceptance of the dedication by the proper public authorities or by general public user.' "

We have some doubt whether there is sufficient evidence in the record to sustain a finding that the plat proprietor, O'Krueg, intended to dedicate the 50-foot roadway strip as a public highway. However, for the purpose of this opinion we will assume the existence of such an intention. On the basis of this assumption, the crucial question is whether there was ever any acceptance of the dedication either by town board action or by extensive public user.

Unless the approval of the original plat by the town board constituted an acceptance of the dedication of the roadway

as a public highway, there has been no other action by the town board which could constitute an acceptance. The action of the town board, in complying with the lot owners' request to provide a "sealing" coating of the roadway surface and to plow snow on a basis whereby the cost was borne by the lot owners, is wholly inconsistent with this roadway's being a public highway. Whether such arrangement between the lot owners and town board was lawful is immaterial to the question at hand. Furthermore, the act of the town board, in approving the 1960 Clinton affidavit as an amendment of the plat, is an express recognition by the board that the roadway was private and not public.

Defendants contend that the original approval of the plat by the town board in December, 1931, constituted an acceptance of O'Krueg's offer to dedicate the 50-foot strip as a public highway and made the dedication complete. In passing on this contention it is necessary to consider the applicable statutory provisions found in secs. 236.11 and 80.38, Stats. 1931.

Sec. 236.11, Stats. 1931, provides that when a plat shall have complied with the requirements for platting set forth in ch. 236, Stats., including recording, "the land intended to be for the streets, alleys, ways, commons, or other public uses as designated on said plat shall be held in the corporate name of the town, city, or village in which such plat is situated in trust to and for the uses and purposes set forth, expressed and intended." A similar provision has been in our statutes since 1849. See ch. 41, sec. 5, R. S. 1849. The title thus given to a town, city, or village with respect to platted streets was early construed to be but an easement for highway purposes, the owners of the abutting property owning to the center of the street subject to this easement. *Kimball v. Kenosha* (1855), 4 Wis. 336 (*321).

Sec. 80.38, Stats. 1931, provides in part that: "The town board of any town within which may be situated any village

or other plat duly certified and recorded and not included within the limits of any incorporated village, may make an order to be recorded by the town clerk declaring such streets and alleys in such village or other plat as they may deem necessary for the public use to be public highways, without any other survey or description than that made in such recorded plat." This statutory provision is also of long standing. See sec. 1224, R. S. 1878. This provision implies that until the town board makes an order declaring the streets in any recorded plat of land in the town to be public highways, such platted streets do not have that status. This court clearly so held in *In re Vacation of Plat of Garden City* (1936), 221 Wis. 134, 266 N. W. 202. The opinion in that case, after quoting the pertinent language of sec. 80.38, states (p. 139):

"It follows that the mere platting and staking out of proposed streets by the proprietor of the plat and the approval thereof under secs. 236.07 and 236.08, Stats. 1933, by the city and town officers, without the specified opening and working thereof by the town, *or the declaration by the town board that they are public highways,* did not result in the public acceptance thereof for use as streets." (Emphasis supplied.)

However, the reference to city officers is an obvious error because sec. 80.38, Stats., is limited in its application to towns. The opinion also makes no mention of the provision of the aforequoted portion of sec. 236.11, Stats. 1931 and 1933. However, the New Mexico court in *Carlsbad v. Neal* (1952), 56 N. M. 465, 245 Pac. (2d) 384, held that a similar statutory provision did not eliminate the necessity of an acceptance of the platted streets by the municipality. We perceive no escape from the conclusion that secs. 236.11 and 80.38, Stats. 1931, must be construed together. Therefore, where platted lands lie outside an incorporated city or village, the mere approval of the plat by the town board and

its recording is not an acceptance of platted streets as public highways. Thus in the instant case, because the town board never entered an order pursuant to sec. 80.38, Stats. 1931, declaring the platted 50-foot strip to be a public highway, there has been no acceptance of the dedication by the town.

Defendants place great reliance on *Pettibone v. Hamilton* (1876), 40 Wis. 402, and *Williams v. Smith* (1868), 22 Wis. 566 (*594). They contend these cases hold that mere approval of the plat by the governing body of the municipality together with the recording of the plat constitutes a completed dedication of any platted streets. The *Pettibone Case* involved a platted alley and abutting thoroughfare for foot travel by the public appearing on a recorded plat in the village (now city) of Fond du Lac. In the *Williams Case* the controversy was over a parcel designated "public square" in the village (now city) of Janesville. In neither case was the court confronted with sec. 80.38, Stats., or any predecessor statute containing a like provision. Therefore, these cases are distinguishable from both the *Garden City Case* and the instant case, because they did not involve plats of land lying outside of an incorporated city or village.

Because of the conclusion reached with respect to the effect of the quoted provision of sec. 80.38, Stats., it is necessary that we qualify a dictum appearing in the court's opinion in *McKenzie v. Haines* (1905), 123 Wis. 557, 560, 102 N. W. 33, which stated:

"A public highway may be created by the making and recording of a plat, in conformity with ch. 101, Stats. 1898, with the highway or street indicated thereon, and when this is done no act on the part of the public is necessary to make it a public highway. Sec. 2263, Stats. 1898; *Gardiner v. Tisdale*, 2 Wis. 153; *Pettibone v. Hamilton*, 40 Wis. 402."

Although this language is broad enough to include roads both within and without the limits of incorporated cities and villages, the *McKenzie Case* and the *Gardiner* and

*Pettibone Cases* cited therein all involved roads within villages. Therefore, this case is not authority supporting defendants' position. However, because of the breadth of the aforequoted language, we deem it necessary to expressly limit it to plats of land *located within the boundaries of incorporated cities and villages.*

There having been no acceptance of dedication by the town board, there remains the question of whether there has been an acceptance by general public user. The learned trial court found that there was sufficient evidence of public user to constitute such an acceptance. However, our review of the record demonstrates that this finding is against the great weight and clear preponderance of the evidence and, thus, cannot stand.

A valid acceptance of a plat dedication by public user does not require a duration of user equivalent to the statute of limitations period necessary to establish a public highway by adverse user alone. *Cincinnati v. Lessee of White* (1832), 31 U. S. 431, 8 L. Ed. 452; Anno. 8 L. Ed. 453. It is a mere coincidence that in the two leading Wisconsin cases in which acceptance by user was found, *Galewski v. Noe, supra,* and *Lake Beulah Protective & Improvement Asso. v. Christenson* (1956), 272 Wis. 493, 76 N. W. (2d) 276, 77 N. W. (2d) 514, such user did extend over a period of more than twenty years. However, public use ought to be for such length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment. *Cincinnati v. Lessee of White, supra,* at page 439; Annos. 8 L. Ed. 453, 129 Am. St. Rep. 576, 621, and Ann. Cas. 1917A, 1109, 1114.

Reference to the recorded plat discloses that the roadway in question is a long cul-de-sac terminating at the west boundary of the plat. To the west lies property known as the Bell Estate whose terrain is such that this roadway has never been used to gain access to, or egress from, it. The

evidence disclosed without dispute that practically all the use made of the roadway was by invitees of the lot owners in the plat, such as laundrymen and deliverymen. The mailboxes of these lot owners were located out on the public highway until about five or six years ago when, as a result of a lot owners' petition to the post-office department, the mailman was directed to deliver mail to the lot owners by means of the disputed roadway. Likewise, the school bus customarily picked up schoolchildren, residing in the plat, at the entrance of the roadway upon the public highway. However, pursuant to regulations governing the operation of the school bus, it has made use of the roadway to pick up one child afflicted with polio at his home in the plat.

Clearly, the afore-enumerated instances of user are all for the benefit of the lot owners and with their implied or actual consent. They are not of such character as would support a finding of acceptance by public user of an intended dedication of a public highway.

This brings us to consideration of the meager testimony relating to user by members of the general public, as distinguished from invitees of the lot owners. The roadway was first used in 1940. In 1946, a sign was erected at its entrance upon the public highway bearing the words, "Private Road." This sign has been maintained there ever since. Plaintiff Morris, co-owner of the westernmost lot in the plat, stated that on Sundays two or three "rigs" drove up to the end of the road and there turned around. However, plaintiff Raetig testified that very few of the people who have driven to the Morris property on Sundays and there turned around, were "joy riders;" rather, they were mostly invitees of other lot owners who mistakenly assumed they could leave by proceeding west instead of retracing the route traveled when coming to make their calls. Raetig also testified that on two occasions "romanticists" who had parked on the roadway were ordered to leave.

The findings of fact, which apparently were drafted by defendants' counsel, state that during all of the years the road was used generally by the public for fishing and other purposes. However, the sole testimony we have found relating to fishing is that given by Raetig that "other individuals" had come in and parked on vacant lots in the plat for hunting and fishing purposes, but had been requested to leave. His testimony makes it clear that such requests to leave were made by other lot owners in the plat. Furthermore, the roadway does not touch the lake or any public lands touching on the lake and no public interest is served by keeping open a road for the benefit of trespassers.

Thus, it appears that the lot owners had taken steps to order out any members of the general public, other than invitees, who were making use of the roadway, with the possible exception of the few who on a Sunday might drive to the end of the cul-de-sac and there turn around. The maintenance of the "Private Road" sign was notice to the latter that they were not traveling on a public highway.

It is our considered judgment that the evidence of public user here adduced is insufficient to constitute an acceptance of any intention of the plat proprietor, O'Krueg, to dedicate the roadway as a public highway. Clearly, such user was not of the extent as would result in any material injury to the public interest, if the roadway is declared to be private and not public.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as prayed for in plaintiffs' complaint.