Mark VANDE ZANDE, Debra Vande Zande, Steven Birch, Gaile Birch, Robert McDowell, Sharon McDowell, Roger Schultz and Dorothy Schultz, Plaintiffs-Appellants,

v.

TOWN OF MARQUETTE and Town of Marquette, Town Board, Defendants-Respondents.

Court of Appeals

*No. 2007AP2354. Submitted on briefs June 12, 2008.*
*—Decided August 13, 2008.*

2008 WI App 144

(Also reported in 758 N.W.2d 187.)

143

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Aaron J. Bernstein* of *Law Offices of Jonathan V. Goodman* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert G. Wixson* of *Winner, Wixson & Pernitz* of Madison.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. BROWN, C.J.   In Wisconsin, the state holds title to the beds of navigable lakes, ponds and rivers in trust for the public's use and enjoyment. *See R.W. Docks*

*& Slips v. State*, 2001 WI 73, ¶ 19, 244 Wis. 2d 497, 628 N.W.2d 781. Of course, title or no, the public cannot enjoy waters that it cannot get to. Accordingly, since 1923, the legislature has required the developers of riparian land to provide, at half-mile intervals or less, routes for the public to access navigable waters. *See* 1923 Wis. Laws, ch. 223. In this case, surrounding landowners dispute the existence of one such public access. The parcel at issue is a strip of land connecting Marine Drive to Lake Puckaway in the Town of Marquette. It was designated as "Public Access" on the original plat, approved and filed in 1974. However, the developer of the plat later conveyed several parcels of surrounding land and included in the deeds a purported interest in the public access parcel. The plaintiff landowners (who we will collectively call the Vande Zandes) are the holders of these purported interests. They claim that the public lake access was never properly created or, alternatively, that the Town, by inaction, has abandoned it or is estopped from asserting the public's right to it.

¶ 2.  As the circuit court did, we reject the Vande Zandes' claims. The lake access was dedicated to public use in accord with the statutes in effect at the time. Further, the legislature has mandated that public lake or stream accesses may not be eliminated except in fairly narrow circumstances that are not present here. Finally, the Vande Zandes have not demonstrated the sort of inequitable conduct by the Town, or prejudice to themselves, that will justify an estoppel against the public's interest in the land. We therefore affirm.

### Background

¶ 3.  The relevant facts were stipulated in the circuit court. Fred Stamm and his wife owned land on

the shore of Lake Puckaway in the Town of Marquette. The Stamms began to develop this land, and in 1970 they filed a certified survey map that showed the disputed parcel designated as "Public Access." In 1971 they sold a parcel by warranty deed, which deed also granted "access rights to the 66' access . . . as will be shown on Stamm's Puckaway Shores, a plat to be recorded in the future."

¶ 4. In 1974, the Stamms hired a surveyor to create a plat of a proposed subdivision, the Stamm Marine Plat ("the Plat"). The Plat created fourteen parcels and also designated a strip of land as "Public Access." This strip is shown to be sixty feet wide, and runs from Marine Drive to the shore of Lake Puckaway. This "Public Access" is in the same location as the "66' access" referred to in the 1971 deed. The Town approved the Stamm Marine Plat the same year. The Town has never improved or maintained the parcel designated as public access.

¶ 5. In 1993 and afterward, the Vande Zandes and others obtained parcels of surrounding land from Stamm. The warranty deeds conveying these properties purported to convey an undivided one-thirtieth interest in the disputed parcel. An agreement recorded with the Vande Zandes' deed required them to make certain improvements to the parcel, which they have done.

¶ 6. In 2006, the Town Board advised those claiming an interest in the disputed parcel that their ownership was not valid. The Vande Zandes responded with a declaratory judgment suit against the Town. The Vande Zandes moved for summary judgment and the Town moved for a declaratory judgment in its favor. The circuit court denied the Vande Zandes' motion and granted the Town's, and the Vande Zandes appealed.

147

¶ 7. The Vande Zandes assert that the disputed parcel is not a public lake access for several reasons that break down into two categories. First, they claim that no public access was ever created: that the Stamms, in subdividing the Plat, did not dedicate the disputed parcel as a public access; that the Town did not properly accept this dedication pursuant to the statutory procedure; and that the public access, as dedicated and accepted, did not comply with certain technical requirements. Second, the Vande Zandes argue that even if a public access was created, it has since ceased to exist: that the Town, by its subsequent action or inaction, has eliminated the access or forfeited the right to claim it, either by discontinuance or by estoppel. We will address the first set of arguments first, beginning with the dedication of the access.

## Was the Disputed Parcel Dedicated as Public Lake Access?

¶ 8. When land is subdivided, roads, streets, and other public spaces are created by means of dedication to the public. *See Cohn v. Town of Randall*, 2001 WI App 176, ¶ 6, 247 Wis. 2d 118, 633 N.W.2d 674. There are two types of dedication: statutory and common law. *Id.* Statutory dedication, as the name suggests, involves compliance with the statutory procedure, and is generally accomplished in the platting process. *Id.* Common law dedication requires an explicit or implicit offer to dedicate land, and an acceptance of the offer by the municipality or by general public use. *Id.* Intent to dedicate to the public is an essential component of either type of dedication. *Id.*

¶ 9. There is no dispute that the Stamms created the Plat and submitted it to the Town with the disputed parcel marked as "Public Access," or that the Town approved the Plat. However, the Vande Zandes contend that the Plat failed to create this "Public Access" because it is missing required statutory language. They point to Wis. Stat. § 236.20(4)(b) (1973),[1] which states that in a final plat "[a]ll lands dedicated to public use except roads and streets shall be clearly marked 'Dedicated to the Public.'" The statute has a companion paragraph, § 236.20(4)(c), that states "[a]ll roads or streets shown on the plat which are not dedicated to public use shall be clearly marked 'Private Road' or 'Private Street' or 'Private Way.'" Because the disputed parcel is merely labeled "Public Access" and not "Dedicated to the Public," the Vande Zandes contend, no public access was created.

¶ 10. The Vande Zandes rely on *Hunt v. Oakwood Hills Civic Ass'n, Inc.*, 19 Wis. 2d 113, 119 N.W.2d 466 (1963). That case concerned whether a parcel labeled "Community Beach" on a plat was properly dedicated to public use. The statute in effect at the relevant time was Wis. Stat. § 236.04(10) (1945), which stated that "[a]ll parks, playgrounds, breathing spots, and other lands dedicated to public use shall be clearly marked thereon 'dedicated to the public for use as a park, or playground, etc.'" The statute also contained, at § 236.04(9), the equivalent of Wis. Stat. § 236.20(4)(c), stating that roads or streets that were *not* to be public should be marked "Private."

---

[1] Subsequent references to the Wisconsin Statutes are to the 1973 version unless otherwise noted.

¶ 11. The court held that the words "Community Beach"

> alone do not meet literally or substantially the require-
> ment of a clear designation of dedication to the public
> required by this section. The section creates a presump-
> tion in favor of nondedication to the public while quite
> the contrary presumption exists in respect to roads and
> streets under sec. 236.04(9), Stats., which provides all
> roads or streets shown on the plat which are not
> dedicated to public use shall be clearly marked thereon
> 'private' road, street, or way. The land in issue is not a
> private road but a beach and is within the meaning of
> sec. 236.04(10) of a breathing, if not a bathing spot.

*Hunt,* 19 Wis. 2d at 118. The court therefore held that no dedication had occurred and the beach was private. *Id.* at 119.

¶ 12. We note that although the relevant statute in *Hunt* appeared to require the specific formula "dedicated to the public for use as . . ." the court did not see it that way. Instead, the court spoke of a "presumption" that land which is neither street nor road is private, and an opposite presumption for streets and roads. *Id.* at 118. Even though the plat in question plainly lacked the statutory formula "dedicated to the public use as . . ." the court did not conclude that no dedication had occurred from this fact alone. Instead, it held that the plat did not meet the statutory requirement of a "clear designation of dedication to the public" "literally *or substantially.*" *Id.* (emphasis added).

¶ 13. The Vande Zandes contend that the label "Public Access" in the Plat fails to overcome the presumption that non-street or road land is private, just as the label "Community Beach" did in *Hunt.*[2] We disagree.

---

[2] We note that this argument by the Vande Zandes requires them to assert that the disputed parcel is neither a street nor a

As the *Hunt* court suggested, the word "community" could have meant either the community at large or the community living in the particular subdivision. *See id.* at 117. The *Hunt* court concluded that in the case before it, "community" was not intended to mean "public." *Id.* To reach the same result here, we would have to conclude that the word "public" was not intended to mean "public." Further, in 1974, as now, the statutes contained a requirement that a subdivider include a public route to navigable waters, connected to public roads, sixty feet or wider. Wis. Stat. § 236.16(3). The statute calls this route a "public access." *Id.* When the Stamms submitted the Plat in 1974, it included a strip of land abutting the lake, connected to Marine Drive, sixty feet wide. That strip was labeled "Public Access." We find it difficult to imagine that this was anything other than the "public access" described in § 236.16, and we therefore conclude that the Plat "substantially" meets the statutory requirement of a "clear dedication to the public." *See Hunt*, 19 Wis. 2d at 118. While the dedication does not contain the exact formula found in Wis. Stat. § 236.20(4), under *Hunt*, this is not necessary. We hold, as the circuit court did, that the Plat dedicated the disputed parcel to the public as lake access.

¶ 14. The Vande Zandes next argue that even if the Plat dedicated a public access, the Town failed to take the necessary steps to accept the dedication. The Vande Zandes acknowledge that the Town approved the Plat, which under Wis. Stat. § 236.29(2) "constitutes

road—otherwise it would be dedicated to the public, since it was not marked "Private." We note that they make the opposite assertion in two of their other arguments, which we address below.

151

acceptance for the purpose designated on the plat of all lands shown on the plat as dedicated to the public including street dedications." Nevertheless, they submit that more was required of the Town, relying on *Gogolewski v. Gust*, 16 Wis. 2d 510, 114 N.W.2d 776 (1962).

¶ 15. In *Gogolewski*, the court was called upon to determine whether a strip of platted land was a public or private street. *Id.* at 514. Though the court expressed doubt about whether the subdivider had intended to dedicate the strip to the public, the court assumed that he had and examined the second requisite for common-law dedication: whether there had been an acceptance of any dedication that might have been made.[3] *Id.* Looking to the statutes in effect at the time of the platting, the court considered WIS. STAT. § 236.11 (1931), which contained language similar to that later found in WIS. STAT. § 236.29(1). That section provided that when a plat complied with the requirements of WIS. STAT. ch. 236, including recording, the land intended to be for streets and other public uses designated on the plat would be held in trust by the town for the expressed and intended public purposes. *Gogolewski*, 16 Wis. 2d at 515. However, the court held that this statute had to be read in conjunction with WIS.

---

[3] The court in *Gogolewski* explained that it was considering the question of common law dedication because no statutory dedication had occurred, as the town had not taken steps in accord with WIS. STAT. ch. 80 (1931) to declare a town highway. *Gogolewski v. Gust*, 16 Wis. 2d 510, 514, 114 N.W.2d 776 (1962). Somewhat perplexingly, the court then appeared to conclude that no common law dedication occurred for the very same reason that no statutory dedication did: because the town did not follow the statutory procedure in WIS. STAT. § 80.38 (1931) for changing streets to public highways. *Gogolewski*, 16 Wis. 2d at 517.

STAT. § 80.38 (1931), which provided that a town board could issue an order declaring platted streets and alleys on unincorporated land to be public highways. *Gogolewski*, 16 Wis. 2d at 515–16. The court held that this section meant that a town's approval of a plat on unincorporated land would not suffice to accept a public highway; a separate and subsequent declaration of the highway was required. *Id.* at 516.

¶ 16.   The Vande Zandes contend that *Gogolewski* controls this case. They point out that WIS. STAT. § 80.38 was still in existence at the time that the Plat was filed and approved. Thus, they argue, because the disputed parcel in this case, like the one in *Gogolewski*, lies on unincorporated land, § 80.38 required additional action by the town board to accept any dedication of the parcel for public use.

¶ 17.   One minor problem with the Vande Zandes' argument is that WIS. STAT. § 80.38 (as well as the *Gogolewski* discussion, *see* 16 Wis. 2d at 516–17) applies only to the creation of "highways." The Vande Zandes make some argument that the disputed access constitutes a "highway" under state law,[4] because this proposition is necessary to their arguments about both *Gogolewski* and the discontinuance of highways under § 80.32, discussed below. However, we do not need to decide whether this (or any) public access is a "highway" because there is another major problem with the Vande Zandes' argument:   between 1931, the time of the platting in *Gogolewski*, and 1974, the time of the platting in this case, the statutes changed.

----

[4] *See* WIS. STAT. § 990.01(12) (defining "highway" to include "all public ways and thoroughfares and all bridges upon the same").

¶ 18. It is true, as the Vande Zandes note, that Wis. Stat. § 80.38 was still in effect in 1974.[5] However, in 1951, the legislature created Wis. Stat. § 236.06(10). *See* 1951 Wis. Laws, ch. 520, § 2. This subsection was later amended and renumbered Wis. Stat. § 236.29(2). *See* 1955 Wis. Laws, ch. 570, § 4. In 1974, this subsection read:

> Dedications to public accepted by approval. When a final plat of a subdivision has been approved by the governing body of the municipality or town in which the subdivision is located and all other required approvals are obtained and the plat is recorded, that approval constitutes acceptance for the purpose designated on the plat of all lands shown on the plat as dedicated to the public including street dedications.

Sec. 236.29(2). This statute, by its plain terms, nullifies the *Gogolewski* holding for any plats approved after the statute's passage in 1951: a town board's approval of a final plat constitutes acceptance of any dedications to the public made therein. No further action is necessary. *See* Trayton L. Lathrop, *Wisconsin's 1955 Platting Law,* 1956 Wis. L. Rev. 385, 396 (1956) ("When an approved plat is recorded, it is deemed that streets and other lands dedicated to the public are accepted by the town or municipality involved. Prior to 1951 streets were not considered as accepted until opened and used or formally accepted." (citations omitted)). The Vande Zandes' reliance on *Gogolewski* is misplaced. Under

---

[5] It no longer exists, having been deleted by 2003 Wis. Act 214 § 99. An earlier proposed bill drafted by the Legislative Council's Special Committee on the Recodification of Town Highway Statutes recommended that it be recodified, with changes, at Wis. Stat. § 82.40; but this provision was not part of the final bill. The early draft can be found at http://www.legis. wisconsin.gov/lc/committees/study/2002/TOWN/files/0009_P4.pdf.

Wis. Stat. § 236.29(2), the Town Board's approval of the Plat constituted an acceptance of the public access.

¶ 19. This same statutory revision refutes another of the Vande Zandes' claims: that the disputed parcel cannot have been dedicated as a public access because it was not "connected to existing public roads." *See* Wis. Stat. § 236.16(3). In fact, the disputed parcel was connected to Marine Drive, as the Plat shows. The Vande Zandes argue that Marine Drive was not a public road at the time the Plat was accepted, because the Town did not accept Marine Drive until it passed a resolution accepting various roads in 1975.[6] As we have shown, this claim is incorrect because the Town's approval of the Plat in 1974 constituted acceptance of the roads marked on it. *See* Wis. Stat. § 236.29(2).

¶ 20. We therefore conclude that the Stamms' filing, and the Town's approval, of the Plat constituted a statutory dedication of the disputed parcel as public access to the lake in accord with Wis. Stat. §§ 236.16(3) and 236.29(2). Because a statutory dedication occurred, we need not address the Vande Zandes claims that no common law dedication occurred because the Stamms' dedication of the public access was a "mistake." We turn next to the Vande Zandes' contentions that the access has been discontinued by lack of use or improvement.

## Has the Public Lake Access Been Discontinued?

¶ 21. Wisconsin Stat. § 80.32 governs the discontinuance of highways. A highway may be discontinued in one of two ways: if it is not "opened, traveled or

---

[6] The Town passed this resolution in response to the Stamms' quitclaiming several roads to the Town. Because Marine Drive and the public access were already dedicated to the public by the filing and acceptance of the Plat, the quitclaim deed and the resolution had no bearing on their legal status.

worked" within four years of being laid out, or if it has been "entirely abandoned as a route of travel" and no highway funds have been spent on it for five years. Sec. 80.32(2); *see also* WIS. STAT. § 82.19(2) (2005–06) (specifying "vehicular" travel). The Vande Zandes contend that both conditions are met here: the public access was never "opened"; and it was abandoned as a route of travel and no highway funds were expended on it for five years.[7] The Town does not dispute this, but instead submits that the public access is not a "highway" and thus not subject to § 80.32(2).[8] Rather, the Town directs us to WIS. STAT. § 236.43, which governs the vacation of parts of a plat dedicated to public use. In the Town's view, this section provides the only means by which a public lake access can cease to exist, and it contains requirements not met here, including that the plat be more than forty years old. *See* § 236.43(1)(a).

■

¶ 22. So long as one assumes that the public access here may be considered a "highway,"[9] WIS. STAT.

---

[7] The Vande Zandes note, as evidence of abandonment, that the Town included their purported one-thirtieth interest in the disputed parcel on their tax summary, and presumably taxed them for it. Though we conclude, as the circuit court did, that the abandonment statute does not apply to the public access, we note that the circuit court ordered the Town to refund whatever portion of the Vande Zandes' taxes was attributable to the purported one-thirtieth interest, and that the Town has not challenged this order on appeal.

[8] The current equivalent of the old WIS. STAT. § 80.32(5) is found at WIS. STAT. § 82.19(2)(c); other portions of the old § 80.32, as revised, are found at § 82.19 and WIS. STAT. § 66.1005. *See* 2003 Wis. Act 214 §§ 83–92.

[9] Though we do not rest our decision on whether the access is a "highway," we do note that in 1957 the legislature amended WIS. STAT. § 236.16 so that the required public lake or stream

§ 236.43 and Wis. Stat. § 80.32(2) would both seem potentially available to terminate it. However, after examining the recent history of both provisions, we conclude that the legislature has chosen § 236.43 as the exclusive means for the termination of a public access to a lake, regardless of when the access was laid out.

¶ 23.  The impetus for legislative action was *Closser v. Town of Harding*, 212 Wis. 2d 561, 569 N.W.2d 338 (Ct. App. 1997), in which we upheld the trial court's vacation of a platted public access under Wis. Stat. § 236.43(1). *Closser*, 212 Wis. 2d at 565–66. The Town in *Closser* opposed the vacation, but we concluded that the landowner plaintiffs had met the statutory requirements to reclaim the access as their own. *Id.*

¶ 24.  The legislature took note of our decision, and in the following year passed 1997 Wis. Act 172.[10] That legislation made a number of revisions to Wis. Stat. chs. 82 and 236, and abrogated *Closser* in several respects. First, it required the consent of the municipality for the vacation of any street, road, or public way. 1997 Wis. Act 172 § 5; Wis. Stat. § 236.43(1)(d) (1997–98). It also revised Wis. Stat. § 80.32, providing that a public access to a navigable lake or stream was not subject to discontinuance under that section. 1997 Wis. Act 172, § 2; § 80.32(5) (1997–98). Finally, it

accesses were no longer described as "highways." 1957 Wis. Laws ch. 88, § 6.

[10] The drafting records for 1997 Wis. Act 172 confirm that the legislation was a direct response to our decision in *Closser v. Town of Harding*, 212 Wis. 2d 561, 569 N.W.2d 338 (Ct. App. 1997). *See* Letter from Richard J. Weber for the Town of Harding to Senator Kevin Shibilski *and* Memorandum from Senator Kevin Shibilski to Peter Grant, Drafting Records, 1997 Wis. Act 172 (on file with the Legislative Reference Bureau, Madison, Wisconsin).

amended WIS. STAT. § 236.16(3), providing explicitly that an application for vacation under § 236.43 is the sole means of vacating a public access. 1997 Wis. Act 172, § 4c; § 236.16(3)(b) (1997–98).

¶ 25. Importantly, it also created WIS. STAT. § 236.16(3)(f) (1997–98), which makes several provisions of § 236.16(3) retroactive. 1997 Wis. Act 172, § 4i. Relevant to this case, retroactivity applies to paragraph (b), which provides that WIS. STAT. § 236.43 is the sole means for vacating a public access; and to paragraph (c), which provides that a local government need not improve a public access.[11]

■

¶ 26. By 1997 Wis. Act 172, then, the legislature changed the law to make several things clear: a local government has no obligation to improve a lake or stream access, regardless of when that access was created; a lake or stream access may not be "discontinued" under WIS. STAT. § 80.32; and, relatedly, a lake or stream access may be "vacated" under WIS. STAT. § 236.43 only, and only if the governing municipality agrees. We acknowledge that 1997 Wis. Act 172 did not explicitly confer retroactivity on § 80.32(5) (1997–98), which exempted public lake accesses from discontinuance under that section. One could therefore argue that private property owners like the Vande Zandes can still seek to have a pre-existing access "discontinued" for abandonment or disuse under § 80.32, even if those

---

[11] The retroactivity granted to WIS. STAT. § 236.16(3)(c) (1997–98) also appears to be a direct overruling of *Closser*. We noted in that case that the statute (then numbered § 236.16(3)) specified that a municipality was not required to improve a lake access. However, we held that this provision, which went into effect in 1980, only applied prospectively and thus did not govern the case. *Closser*, 212 Wis. 2d at 576.

same property owners could not (without the municipality's cooperation), have the access "vacated" for lack of improvement under § 236.43. However, such an argument ignores the fact that the legislation *did* make retroactive the rule in § 236.16(c) that a public access need not be improved. If we were to apply § 80.32 only prospectively, and thereby allow the discontinuation of public accesses that have not been "worked," we would thus create a conflict with § 236.16(c), which states that a local government need not improve public accesses. We must reasonably construe statutes to avoid such conflicts. *State v. Szulczewski*, 216 Wis. 2d 495, 503, 574 N.W.2d 660 (1998). The legislature's intent with 1997 Wis. Act 172 was plainly to protect public accesses to lakes and streams, whether pre-existing or not. We therefore hold that § 80.32 and its successors may not be used to discontinue a public lake or stream access, regardless of when that access was created.

¶ 27.  Completely aside from the foregoing discussion, we also note that in *Carroll v. Town of Balsam Lake*, 206 Wis. 2d 529, 559 N.W.2d 261 (Ct. App. 1996), we held that WIS. STAT. § 80.32 does not operate to discontinue a highway until public use actually requires the opening of the highway and the public authority in charge "acts with a manifest abuse of discretion in refusing to open the property." *Carroll*, 206 Wis. 2d at 536. The Town does not mention *Carroll*. The Vande Zandes, for their part, make no argument whatsoever that the public use required the opening of the access and that the Town abused its discretion in not opening it. In fact, their contention seems to be the opposite:  that the public has not previously, and does not now, need the access. *Carroll* therefore appears to provide an independent ground for affirming the trial court's holding that the access was not abandoned under § 80.32.

## Is the Town Equitably Estopped
## from Claiming the Public Access?

¶ 28.  The Vande Zandes finally argue that even if the public access was properly dedicated and accepted, and not discontinued or vacated, the Town should nevertheless be equitably estopped from asserting its existence. They claim that when they purchased their property from the Stamms, their "primary interest" was whether it had lake access so that they could install a pier. They note the thirty-one years between the filing of the Stamm Marine Plat and the Town's assertion of an interest in the public access, and complain that the Town's claim has diminished the value of their property and made it difficult to sell. The Vande Zandes invoke *Klinkert v. City of Racine*, 177 Wis. 200, 188 N.W. 72 (1922), for the proposition that equitable estoppel may sometimes be applied to defeat the public's property interests. There the supreme court noted that although "mere laches" on the part of a municipality or its officers will not give rise to estoppel, there may sometimes arise "private rights of more persuasive force in the particular case than those of the public." *Id.* at 205 (citation omitted).

¶ 29.  However, the *Klinkert* court also stated that in order for estoppel to arise, there must be "(1) inequitable conduct on the part of the city, and (2) irreparable injury to parties honestly and in good faith acting in reliance thereon." *Id.* (citation omitted). Further, in *Cohn*, 247 Wis. 2d 118, we stated that

> Estoppel is not applied as freely against the public as against private persons. "[O]nly when some affirmative action has been taken, or when there has been some great negligence or delay with relation to some matter

160

upon which the parties have a right to rely . . . will [the court] be authorized to apply [estoppel] so as to prevent manifest injustice." The evidence must be so clear and distinct that a contrary result would amount to a fraud.

*Id.*, ¶ 19 (citations omitted).

¶ 30. Like the plaintiffs in *Cohn*, the Vande Zandes "underestimate the quality of the evidence needed to establish an estoppel against a municipality." *See id.* Aside from the delay (which falls within the category of "mere laches"), none of the conduct of which the Vande Zandes complain appears even to be conduct by the Town, much less "inequitable" conduct. Rather, the prejudice that they have suffered is a result of the Stamms having sold them an interest in land that was not theirs to sell. We will not remedy this harm by taking away what rightfully belongs to the public.

*By the Court.*—Order affirmed.